In re Earl W. SIMMONS, Debtor.

Earl W. SIMMONS, et al, Plaintiff,

v.

JOHNSON, CURNEY & FIELDS, P.C., John Curney and J. David Brown, Defendants.

Bankruptcy No. 95–50853.
Adv. No. 96–5151C.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

Feb. 3, 1997.

---

Charles D. Houlihan, Jr., Simsbury, CT, for Plaintiff.

Clemens & Spencer, George H. Spencer, Jr., James A. Hoffman, San Antonio, TX, for Defendants.

### DECISION ON MOTION TO DISMISS, OR ALTERNATIVELY, TO ABSTAIN, AND DECISION ON REQUEST FOR JURY DEMAND

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for consideration the motion of defendants to dismiss this adversary proceeding, brought by a former chapter 11 debtor post-confirmation alleging various state law claims against his former bankruptcy (and pre-bankruptcy) counsel. For the reasons stated in this opinion, we conclude that the federal district courts do have subject matter jurisdiction over those claims which relate to the representation of plaintiff during his prior bankruptcy filing. We further recommend that the district court find that it has supplemental jurisdiction over those claims which have their source in non-bankruptcy related pre-bankruptcy representation but that the district court should decline to exercise that jurisdiction. We deny the defendants' the motion to dismiss with respect to the post-petition causes of action, and further deny the motion to abstain. We also deny the defendants' request for a jury trial.

### Background Facts

Earl Wayne Simmons, the plaintiff in this case, filed for chapter 11 relief on March 27, 1995. During the course of the case, Simmons changed counsel. On November 29, 1995, this court confirmed Mr. Simmons' liquidating plan of reorganization. On August 30, 1996, nine months after confirmation, Mr. Simmons brought this action against his former bankruptcy (and pre-bankruptcy) counsel, J. David Brown and John Curney, as well as against their the law firm, Johnson, Curney & Fields, P.C.[1]

In his complaint, Mr. Simmons alleges that the defendants' representation of plaintiff during the chapter 11 bankruptcy proceeding before this court and in prior representation of the plaintiff in actions before both a Texas state court and the federal district court raised causes of action for legal malpractice, violations of the Texas Deceptive Trade Practices Act, breach of the fiduciary duty owed by lawyers to their clients, and breach of contract. In response, the defendants have moved for dismissal of these actions pursuant to Rule 12(b)(1) (made applicable to adversary proceedings in bankruptcy by Rule 7012 of the Federal Rules of Bankruptcy Procedure), alleging lack of subject matter jurisdiction. See FED.R.BANKR.P. 7012; FED. R.CIV.P. 12(b)(1). Alternatively, defendants ask the court to abstain from hearing this case, either under the permissive provisions of section 1334(c)(1) or by virtue of the "mandatory" provisions of section 1334(c)(2). See 28 U.S.C. §§ 1334(c)(1), (2). Defendants' also demand a jury trial, and insist, by virtue of that demand (and their refusal to consent to a jury trial in the bankruptcy court), that this matter must be tried before an Article III court. They would, in that regard, seek withdrawal of the reference by the district court.

### Discussion

#### A. DISMISSAL

█ Defendants' motion to dismiss is made in recognition of the settled principle that this court, like all federal courts, is one of limited jurisdiction. *Celotex Corp. v. Edwards,* 514 U.S. 300, ——, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403 (1995). While defendants do not specifically cite to Rule 12, the motion is nonetheless grounded on a claim that this court must dismiss because the court lacks subject matter jurisdiction.[2]

The starting point for our analysis of jurisdiction is 28 U.S.C. § 1334. In relevant part, this provision states:

---

1. Mr. Brown is no longer with the Johnson, Curney law firm.

2. To the extent, however, that the defendants' specific claim is unclear, we invoke the issue of subject matter jurisdiction *sua sponte.* *See Clark v. Paul Gray, Inc.,* 306 U.S. 583, 588, 59 S.Ct. 744, 750, 83 L.Ed. 1001 (1939) (finding that all federal courts may raise the issue of their subject matter jurisdiction at any time and are obliged to dismiss a proceeding *sua sponte* if they find such jurisdiction to be absent); *Oswalt v. Scripto, Inc.,* 616 F.2d 191, 192 (5th Cir.1980) (same).

(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district court shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334. The statute thus describes the parameters of federal court jurisdiction, insofar as that jurisdiction has to do with bankruptcy matters.[3] In turn, the power to exercise that jurisdiction is conferred on the bankruptcy courts by reference from the district court. 28 U.S.C. § 157(a).[4]

28 U.S.C. § 157(a) allows a district court to refer cases by general or specific reference. This district, like all other districts in the United States, *see United States Lines, Inc. v. American Steamship Owners Mutual Protection & Indemnity Assc., Inc. (In re United States Lines, Inc.)*, 169 B.R. 804, 814 (Bankr.S.D.N.Y.1994), has entered a general order which operates as a blanket referral of all matters that the filer indicates are "bankruptcy matters" to the bankruptcy court, such that all such matters are filed directly with the clerk of the bankruptcy court. *See* Local Rule 1001(f); Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc of the United States District Court for the Western District of Texas. In practice, therefore, the district court has no interaction with bankruptcy cases unless a bankruptcy court decision is appealed, or unless a party requests withdrawal of reference of a particular case or matter. Thus, a bankruptcy court's "jurisdiction" is actually coterminous with the jurisdiction of the district court as set out in section 1334. *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 569 (5th Cir.1995).[5] Accordingly, our first determination must be whether section 1334 encompasses this lawsuit.

The types of matters over which a district court has bankruptcy jurisdiction can be parsed from the statute into the following categories:

1. "cases under title 11",
2. "proceedings arising under title 11",
3. "proceedings "arising in" a case under title 11, and
4. "proceedings "related to" a case under title 11.

28 U.S.C. §§ 1334(a), (b); *Wood v. Wood (In re Wood)*, 825 F.2d 90, 92 (5th Cir.1987). The first category, "cases under title 11", applies to "the bankruptcy petition itself, over which district courts (and their bankruptcy units) have original and exclusive jurisdiction." *In re Wood*, 825 F.2d at 92; 28 U.S.C. § 1334(a); *see also In re Walker*, 51 F.3d at 568 (equating "cases under title 11"

---

3. Other neighboring provisions in title 28 describe federal courts' subject matter jurisdiction over diversity actions (§ 1332), federal questions (§ 1331), actions against foreign states (§ 1330), admiralty (§ 1333), commerce and antitrust matters (§ 1337), patents and copyrights (§ 1338), postal matters (§ 1339), customs duties (§ 1340), civil rights actions (§ 1343), certain election disputes (§ 1344), actions involving national banks (§ 1348), matters in which the United States is a party plaintiff (§ 1345) or defendant (§ 1346), and a variety of other matters (§§ 1347–1368). Thus, in the broader context, section 1334 creates but one species of subject matter over which federal courts have jurisdiction.

4. Section 157(a) provides:
 Each district court may provide any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.
 28 U.S.C. § 157.

5. There is, in actuality, no such thing as "bankruptcy court jurisdiction," *per se*. Subject matter jurisdiction is delineated by Congress in title 28 and conferred on the district court. The bankruptcy court, by operation of the referral order, *exercises* that jurisdiction, but the subject matter jurisdiction being exercised is precisely the same as it would be had the matter not been referred by the district court. There may, of course, be limitations on the extent to which the bankruptcy court can in fact exert *judicial power* in the exercise of bankruptcy subject matter jurisdiction, but that is an entirely different question. *See Matter of Wood*, 825 F.2d 90, 91 (5th Cir. 1987). To avoid confusion, when discussing subject matter jurisdiction, it is sometimes helpful to speak of the matter as though it were pending in district court. This places the focus properly on subject matter jurisdiction, placing the always-thorny questions of bankruptcy courts' judicial power to the side. That will be the approach we employ in this decision.

with bankruptcy petition itself); *Eastland Partners Ltd. Partnership v. Brown (In re Eastland Partners Ltd. Partnership)*, 199 B.R. 917, 919 (Bankr.E.D.Mich.1996) (describing "cases under title 11" as those "which involve causes of action created by title 11"). In contrast, a "proceeding" has been defined as any "subaction raised or commenced within the case, including motions or adversary proceedings, which may raise a dispute or litigated matter." 2 COLLIER ON BANKRUPTCY, ¶ 301.03, at 301–3 (15th ed. 1996).

The current matters raised by plaintiff do not, of course, constitute the bankruptcy case itself. Only Simmons' bankruptcy petition itself falls into that category. Thus, the matter must fall into one of the other three categories, described in section 1334(b), or be dismissed for lack of subject matter jurisdiction.

Again, the three remaining categories are created by § 1334(b) which provides district courts with "original but not exclusive jurisdiction of all civil proceedings [1] arising under title 11, or [2] arising in or [3] related to cases under title 11." 28 U.S.C. § 1334(b) (brackets added). Relevant legislative history [6] suggests that the entire § 1334(b) provision should be broadly interpreted to include all possible grants of jurisdiction:

> Subsection (b) grants to the U.S. district courts original, but not exclusive, jurisdiction of all civil proceedings arising under or related to cases under title 11. This broad grant of jurisdiction will enable the bankruptcy courts, which are created as adjuncts of the district court for the purpose of exercising the jurisdiction, to dispose of controversies that arise in bankruptcy cases or under the bankruptcy code. Actions that formerly had to be tried in the State court or in the Federal district court, at great cost and delay to the estate, may now be tried in the bankruptcy court. The idea of possession and consent as bases for jurisdiction is eliminated. The adjunct bankruptcy courts will exercise *in personam* jurisdiction as well as *in rem* jurisdiction in order that they may handle everything that arises in a bankruptcy case.

S.REP. No. 989, 95th Cong, 2d Sess, 153 (1978), *reprinted in* 1978 U.S.CODE CONG. & ADMIN.NEWS 5787, 5939.

A facial reading of the statute suggests that the three categories were intended to address separate, although perhaps overlapping jurisdictional issues.[7] That reading comports with a basic tenet of statutory construction that every word in a statute be given effect. *Bowsher v. Merck, Inc.*, 460 U.S. 824, 833, 103 S.Ct. 1587, 1593, 75 L.Ed.2d 580 (1983).

Courts that have discussed the categories have provided a rather consistent reading of "related to"[8] and "arising under."[9] Few

---

**6.** Since there was almost no legislative history on the 1984 Act, we look to the legislative history from its predecessor, subsection 1471(b) of the 1978 Act, from which it was taken verbatim. *See In re Wood*, 825 F.2d at 92.

**7.** On the theory that a picture is worth a thousand words, one might think of the three interlocking circles that are normally used to represent the concept of the Trinity in Christian theology.

**8.** The test was first articulated by the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (1984). It finds that matters are "related to" the bankruptcy if "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy...." *Id.* at 994.

The Supreme Court noted in *Celotex Corp. v. Edwards*, 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995), that the First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits have adopted the *Pacor* test with little or no variation. *Id.* at 514 U.S. at —— n. 6, 115 S.Ct. at 1499 n. 6.

The Seventh Circuit has articulated a slightly more limited definition of a court's "related to" jurisdiction. They hold that a case is "related to" a bankruptcy when the dispute "affects the amount of property for distribution or the allocation of property among creditors." *Elscint, Inc. v. First Wis. Fin. Corp. (In re Xonics, Inc.)*, 813 F.2d 127, 131 (7th Cir.1987).

**9.** The few courts that have addressed "arising under" have held that the category provides jurisdiction to courts for causes of action that are created by Title 11. *See, e.g., Carlton v. Baww, Inc.*, 751 F.2d 781, 787 (5th Cir.1985) (prepetition fraudulent conveyance action became trustee's 11 U.S.C. § 544(b) action when conveyor petitioned for bankruptcy and thus invoked 28 U.S.C. § 1334(b) "arising under" jurisdiction); *National City Bank v. Coopers & Lybrand*, 802

courts, however, have had the opportunity to examine the exact parameters of "arising in." We must undertake that examination now.

With so little analysis of section 1334 "arising in" jurisdiction, prior courts that have been called upon to address the issue have looked for analogies in the interpretations of similar statutes. They found at least one interpretation in the Fifth Circuit decision *In re Wood*, 825 F.2d 90. *Wood* defined the terms "arising in" and "arising under" as they were used in another statutory provision, 28 U.S.C. § 157(b). In an oft cited provision from that case, *see, e.g., Bergstrom v. Dalkon Shield Claimant's Trust (In re A.H. Robins Co.)*, 86 F.3d 364, 372 (4th Cir.), *cert. denied*, ─── U.S. ───, 117 S.Ct. 483, 136 L.Ed.2d 377 (1996); *Lorence v. Does 1 Through 50 (In re Diversified Contract Services, Inc.)*, 167 B.R. 591, 594 (Bankr. N.D.Cal.1994); *Silverman v. General Railway Signal Co. (In re Leco Enters., Inc.)*, 144 B.R. 244, 249 (D.S.D.N.Y.1992); *Spaulding & Co. v. Buchanan (In re Spaulding)*, 131 B.R. 84, 88 (D.N.D.Ill.1990), the *Wood* court said that " 'arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside the bankruptcy." *In re Wood*, 825 F.2d at 97. In practice, few matters appear to fall within this definition. Nonetheless, there are a few examples from the case law that lend some guidance.

In *In re A.H. Robins Co.*, 86 F.3d 364, the Fourth Circuit found that a contest by attorneys over the appropriateness of fees to be distributed out of a trust set up for personal injury claims in a confirmed bankruptcy case was a dispute within the jurisdiction of the district court under § 1334 because the trust "would have no practical existence but for the bankruptcy." *Id.* at 372. Moreover, concluded the court, the "district court's order limiting the percent that the plaintiffs' may receive in fees could not have occurred but for the bankruptcy and, therefore, said order 'arises in' the bankruptcy, and the court has jurisdiction under § 1334(b)." *Id.*

In another case, *In re Diversified Contract Services, Inc.*, 167 B.R. 591 (N.D.Cal.1994), a bankruptcy court had to address a claim brought by a chapter 11 trustee against her former bankruptcy attorney. That claim arose from a motion made by bankruptcy counsel to withdraw on grounds that the chapter 11 trustee had committed certain unethical and possibly criminal acts in connection with the management of the case's bankruptcy estate. (It is unclear whether bankruptcy counsel's motion was granted or not; it is clear, however, that the trustee was removed from the case after the allegations had been heard. *See id.*, at 593.)

One year later, the chapter 11 trustee sued her former bankruptcy counsel in state court for negligence, breach of fiduciary duty, slander, fraud, tortious interference, intentional inflection of emotional distress and abuse of process. After the action had been removed to bankruptcy court, the trustee asked the court to remand the case to state court, because, *inter alia*, the court lacked subject matter jurisdiction. The bankruptcy court did not agree. The language "arising in," it found, provided the necessary power to exercise jurisdiction because the legal representation arose in connection with the bankruptcy case and, "[f]urthermore, the[ ] alleged breach of those obligations was committed at and in connection with a hearing before the bankruptcy court. It is ludicrous to contend

---

F.2d 990, 993–94 (8th Cir.1986) (suit by indentured trustee against bankruptcy debtor's former accountant did not provide "arises under" jurisdiction because no provisions of title 11 were at issue).

This interpretation appears to be quite consistent with the rather unclouded legislative history on "arising under": The phrase "arising under" has a well defined and broad meaning in the jurisdictional context. By a grant of jurisdiction over all proceedings arising under title 11, the bankruptcy courts will be able to hear any matter under which a claim is made under a provision of title 11. For example, a claim of exemptions under 11 U.S.C. § 522 would be cognizable by the bankruptcy court, as would a claim of discrimination in violation of 11 U.S.C. § 525. Any action by the trustee under an avoiding power would be a proceeding arising under title 11, because the trustee would be claiming based on a right given by one of the sections in subchapter III of chapter 5 of title 11.

H.R.Rep. No. 595, 95th Cong., 2d Sess. 445–46, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6401.

that such claims could arise outside a bankruptcy case." *Id.* at 595.

Similarly, in *Billing v. Ravin Greenberg & Zackin, P.A. (In re Billing),* 150 B.R. 563, 566 (D.N.J.1993), a district court grappled with whether a post-confirmation malpractice claim against debtor's former bankruptcy attorneys provided the necessary "arising in" jurisdiction. Although the court recognized that malpractice is a claim that can arise outside of the bankruptcy court, the court nevertheless concluded that "the allegations supporting the claim in this case are entirely unique to the bankruptcy law. . . . . Here, the bankruptcy proceeding was obviously the *sine qua non* of the malpractice action." *Id.* at 566.[10]

The approach taken by these courts comports with a plain meaning interpretation of the statute. What else, after all, could Congress have meant when it made specific provision for jurisdiction over matters that "arise in" bankruptcy? Recalling our obligation to give meaning and effect, if possible, to every word Congress uses in a given statute, *see Bowsher,* 460 U.S., at 832–33, 103 S.Ct., at 1593, the approach taken by these courts reflects a sensible and defensible construction of the statute, one which gives independent meaning to "arising in" jurisdiction and thus augments the overall scope of bankruptcy jurisdiction consistent with the

scheme outlined by Congress in 1978 when the Code and its related jurisdictional provisions were enacted. There will be overlap with one or more of the other two "reservoirs" of jurisdiction, to be sure, but the use of three different concepts assures that cases that might otherwise fall beyond the margins of one or both of the other two provisions, but which ought otherwise to fall within the "broad grant of jurisdiction" contemplated by Congress, will in fact be included within the federal court's bankruptcy subject matter jurisdiction.

 While we cannot—and need not—define the precise parameters of "arise in" jurisdiction, we do conclude that matters falling into the category must at the very least be of a sort that *could not have occurred but for the bankruptcy.*[11] For example, an ordinary contract made between a debtor and another party during the pendency of a bankruptcy could have occurred whether the bankruptcy had been filed or not. *See, e.g., In re Spaulding,* 131 B.R. at 87 (finding that settlement agreement reached during bankruptcy process between debtor and creditor which benefitted third party did not create "arising in" jurisdiction for third-party beneficiary who later sued creditor because indemnification action would have an existence outside the bankruptcy).[12] A bankruptcy

---

**10.** Rather than make a § 1334 determination as to jurisdiction, the district court condensed the issues and determined whether the matter was a core or non-core proceeding, which equals a determination whether the issue "arises in" or "arises under" a title 11 proceeding, under 28 U.S.C. § 157. Since the court found the matter to "arise in" a chapter 11 proceeding, and thus core under § 157, the court appeared to have automatically assumed that jurisdiction existed under 28 U.S.C. § 1334. *See Billing,* 150 B.R. at 564–67.

Although this approach is analytically confusing, it is not *per se* wrong. The questions that must be asked under § 157 are at least a sub-set of the questions that any court should ask to make a § 1334 determination: does the matter "arise in" or "arise under" a title 11 proceeding. If the court finds jurisdiction under the sub-set, the broader scope of § 1334 is, of necessity, satisfied.

On appeal, 22 F.3d 1242, the Third Circuit did not take the same analytical approach. It first asked whether jurisdiction existed under § 1334 (in an unilluminating passage, the court found

that the district court's determination that jurisdiction existed under § 1334 was proper, *see id.* at 1244) and then addressed the § 157 core/non-core issue. *Id.* at 1245.

**11.** This approach was originally explained by a bankruptcy commentator, who argued that "arising in" jurisdiction essentially imagined a "but for" approach; had the bankruptcy not occurred, no claim could have existed. Susan Block–Lieb, *The Case Against Supplemental Bankruptcy Jurisdiction: A Constitutional, Statutory, and Policy Analysis,* 62 Fordham L.Rev. 721, 733 (1994).

**12.** This particular case is probably best understood as excluding not so much a subsequent dispute over the settlement between the debtor and the party with whom it made that settlement (which in all likelihood *does* fall within either the "arising in" or "related to" bankruptcy jurisdiction of the federal courts) but rather the suit between the non-debtor party and the third party over the indemnification provision, which really did not owe its existence to the bankruptcy process itself.

judge's *imprimatur* does not automatically convert a dispute into one "arising in" the bankruptcy case. By the same token, however, if a plan creates a trust and shoehorns all claimants into an exclusive mechanism by which those claimants are to be satisfied for years into the future out of that trust, then future disputes over the interpretation or enforcement of the trust *would* fall into the bankruptcy court's "arising in" jurisdiction, because such disputes would not have occurred but for the bankruptcy process. *See, e.g., A.H. Robins Co.,* 86 F.3d 364.[13]

In applying this approach to our set of facts, we find that those claims of malpractice which originated out of pre- and post-petition advise of counsel concerning the *bankruptcy itself* are matters that fall within "arising in" jurisdiction.[14] We believe this comports with the plain meaning of the statute, the relevant case law, and the broad grant of power that Congress intended federal courts to have over bankruptcy matters. In making this determination, we do not yet decide whether

we *should* exercise that power nor do we suggest how this court is to deal with those claims of malpractice that arose out of pre-petition advice having nothing to do with the debtors' bankruptcy. Before we address these issues, however, we must address an implied challenge by defendant that a finding of "arising in" jurisdiction could not include the malpractice claims because of the Fifth Circuit's holding in *In re Wood.*

■ The defendants claim that *Wood* decided, as a matter of law, that "related to" jurisdiction encompasses the other two categories established by § 1334 (*i.e.,* the "concentric circle" concept discussed *supra* at note 13). We disagree. A close reading of *Wood* confirms that this is not what the Fifth Circuit held.[15]

The Fifth Circuit began its analysis in *In re Wood* by examining the legislative history to the predecessor statute to section 1334.[16] The court noted, as have we, that Congress

---

**13.** Interestingly, such disputes represent an example of why our "three intersecting circles" operates as a better conceptual model than does the oft-assumed "concentric circle" model. The dispute which arose in *Robins* arose long after the estate had passed through confirmation. There was thus no further "estate administration" which could be "conceivably affected" by the dispute which arose much later over distributions to attorneys from the trust. *Cf. Feld v. Zale Corp. (In re Zale Corp.),* 62 F.3d 746, 752–53 (5th Cir.1995). Moreover, the dispute did not arise under any provision of the Bankruptcy Code (the provisions of section 330 did not apply to these attorneys). Yet the matter clearly belonged in the federal court, not in one or more state courts. And it just as clearly was a dispute which "arose in" the bankruptcy case (*i.e.,* that is where it had its genesis). The matter would have fallen outside federal bankruptcy jurisdiction were one to have employed a "concentric circle" model (*i.e.,* a model under which it is assumed that "related to" jurisdiction is the largest of three concentric circles, subsuming the other two fields).

**14.** We include pre-bankruptcy matters because such representation, at least extending back for a period of one year prior to the bankruptcy filing, is subject to bankruptcy court review via section 329 of the Bankruptcy Code, under which the bankruptcy court may even order a disgorgement of fees already paid. *See* 11 U.S.C. § 329.

**15.** Although not directly germane, the facts of *In re Wood,* 825 F.2d 90, are illuminating. The

*Wood* case involved a dispute among several directors in what appears to have been a very closely held corporation; two shareholder/directors, Dr. James Wood and Dr. Arthur Wood, III, each originally owned 1,000 shares in a medical clinic. In March 1984, Dr. James Wood and his wife filed bankruptcy under Chapter 11. In May of 1985, Dr. Arthur Wood filed a complaint in bankruptcy court alleging that in November of 1984, Dr. and Mrs. James Wood, directors of the medical clinic, acted together with another outside director to wrongfully issue additional stock to Dr. James Wood. This additional distribution violated an agreement between Dr. James Wood and Dr. Arthur Wood that they were to be equal partners in the clinic. The complaint sought damages and declaratory relief. *In re Wood,* 825 F.2d at 91.

The defendant in the case, Dr. James Wood, moved to dismiss the adversary proceeding for lack of subject matter jurisdiction. The bankruptcy court denied the motion and held that the matter was a core proceeding. On appeal to the district court, the court held that the matter was neither a "core" proceeding, over which the bankruptcy judge had full judicial power, nor an "otherwise related" or "non-core" proceeding, over which the bankruptcy judge had limited judicial power. *Id.* at 91–92. Accordingly, the district court dismissed the complaint for lack of subject matter jurisdiction. The plaintiffs then appealed to the Fifth Circuit. *Id.* at 92.

**16.** The relevant statute was 28 U.S.C. § 1471 (repealed). *See* discussion *supra* note 6.

created broad jurisdiction under the Bankruptcy Code in recognition of the inefficiencies that had occurred under the patchwork of jurisdiction that existed under the old Bankruptcy Act.[17] The court then went on to observe "... that the phrase 'arising under title 11, or arising in or related to cases under title 11' was meant, not to distinguish between different matters, but to identify collectively a broad range of matters subject to the bankruptcy jurisdiction of federal courts." *In re Wood*, 825 F.2d at 92; *see also Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.)*, 815 F.2d 165, 168 (1st Cir.1987) (noting that legislative history indicates that bankruptcy courts were expected to exercise jurisdiction "close to or congruent with constitutional limits").

The Fifth Circuit then commented, with regard to the three remaining categories:

For purposes of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between proceedings 'arising under, 'arising in a case under', or 'related to a case under', title 11. These references operate conjunctively to define the scope of

jurisdiction. Therefore, it is necessary only to determine whether a matter is at least 'related to' the bankruptcy.

*In re Wood*, 825 F.2d at 93; *accord In re Walker*, 51 F.3d at 568.

This quotation, claims defendant, supports their position that the district court has no jurisdiction over the present controversy. In effect, they argue, the statement made all categories except "related to" nugatory. Because "related to" otherwise requires some effect on the bankruptcy estate, *In re Wood*, 825 F.2d at 93, and the present case clearly has no such effect, they conclude that the district court is without jurisdiction to decide the state law malpractice claims in this case.

We readily acknowledge that *Wood* could indeed be read to *imply* that we need only look at "related to" jurisdiction to resolve bankruptcy jurisdiction issues. *Id.* at 93. Recognizing this implication, however, does not end our analysis. Neither *Wood* nor any of the other Fifth Circuit bankruptcy jurisdiction cases hold that "related to" is the *only* means by which a district court has bankruptcy jurisdiction.[18] *Wood* specifically

---

17. One commentator pointed out the following problems with the exercise of jurisdiction under the old Bankruptcy Act:

The jurisdiction of the bankruptcy court under the former Bankruptcy Act was limited to "summary jurisdiction." This means, in essence, that courts had jurisdiction over that property that was either actual or constructively possessed by the debtor on the date of bankruptcy. In addition, the court had personal jurisdiction over the debtor and other persons who consented to the court's jurisdiction. By basing jurisdiction on possession or consent, however, many disputes arose in bankruptcy cases fell outside the scope of the bankruptcy court's jurisdiction and therefore had to be adjudicated in nonbankruptcy state or federal courts. For example, when a trustee filed a complaint in a bankruptcy court charging that the estate owned an easement adjoining the debtor's real estate and that he was entitled to construct improvements there, the court of appeals held that bankruptcy court lacked jurisdiction to deal with the issue. Similarly, a bankruptcy court had no jurisdiction to determine whether a discharged debt had been reaffirmed. As a result, bankruptcy judges were unable to preside over many significant issues that had a direct impact on the bankruptcy case.

WEINTRAUB & RESNICK, BANKRUPTCY LAW MANUAL ¶ 6.01, at 6–3 (1986).

18. For example, the *Wood* court only held that a complaint over wrongfully issued stock which arose post-petition was a claim of the bankruptcy estate over which the court could exercise jurisdiction. *Wood*, 825 F.2d at 91–98. In *Matter of Querner*, the court found that the bankruptcy court had abused its discretion in retaining jurisdiction over pendent state claims after the underlying Chapter 13 case had been completed. *Querner v. Querner (In re Querner)*, 7 F.3d 1199 (5th Cir.1993) Importantly, the Fifth Circuit did *not* hold that the bankruptcy court *did not have jurisdiction;* it only said that it should not have *exercised* it in that instance. *Id.* at 1200–1202.

The more recent decision of the court in *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746 (5th Cir.1995) is more difficult, though still not inconsistent. There, the court found that the bankruptcy court *lacked* jurisdiction to enter an injunction against one third party's bringing an indemnity action against another third party in order to effectuate a settlement with the party sought to be so protected because the matter sought to be enjoined fell outside the "related to" jurisdiction of the court. *Id.* at 754–55. The court did not address whether the matter could have been subsumed under one of the other two categories, but did not need to because the dispute in question was between two third parties. The court simply concluded that the only reservoir of jurisdiction that could possibly extend to

noted that, because the references operated conjunctively, it was necessary *"only to* determine whether a matter is *at least* "related to" the bankruptcy." *Id.* at 93 (emphasis added). This finding does not necessarily imply, as movant suggests, that "arising in" is devoid of any meaning, entirely consumed by "related to" jurisdiction. "At least" does not mean that there can be no other possibility.[19]

Indeed, the latter part of the *Wood* decision supports our reading. After deciding that the district court had subject-matter jurisdiction over post-petition claims under 28 U.S.C. § 1334, the court then addressed whether the bankruptcy court was the appropriate court to issue a final decision on this issue. The court examined the statute that allowed bankruptcy courts to exercise bankruptcy jurisdiction, 28 U.S.C. § 157, and noted that the prepositional qualifications of core proceedings ("arising under" and "arising in") were "taken from two of the three categories of jurisdiction set forth in section 1334(b)." *In re Wood,* at 96. It found that while

the purpose of [the] language in section 1334(b) is to define conjunctively the scope of jurisdiction, *each category has a distinguishable meaning.* These meanings become relevant because section 157 apparently equates core proceedings with the

categories of "arising under and "arising in" proceedings.

*In re Wood,* 825 F.2d at 96–97 (citations omitted). Thus, the Fifth Circuit recognized that the "prepositional qualifications" in § 1334 ("related to," "arising under," and "arising in") define distinct matters. Finding that it is only necessary to determine whether a matter is *at least* "related to" the bankruptcy in this case, *id.* at 93, therefore, does not usurp the possibility · that one of these "distinguishable" categories incorporates matters which would otherwise fall outside the "related to" penumbra.[20]

Ascribing distinct meanings for each of the jurisdictional categories ensures that we comply with the basic tenet of statutory construction requiring us to give every word effect, where possible. *See Bowsher v. Merck, Inc.,* 460 U.S. 824, 833, 103 S.Ct. 1587, 1593, 75 L.Ed.2d 580 (1983).[21] We also note that another tenet of statutory construction requires us to read the statute as a whole, rather than in isolation. *Dole v. United Steelworkers,* 494 U.S. 26, 35, 110 S.Ct. 929, 934, 108 L.Ed.2d 23 (1990). This second tenet is important because § 1334(c)(2) states that:

Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, *related to a case under title 11* but not *arising under title*

such a dispute would be "related to" jurisdiction, citing to a Third Circuit decision that so held. *See Quattrone Accountants, Inc. v. I.R.S.,* 895 F.2d 921, 926 (3d Cir.1990). The court also adverted to a Seventh Circuit decision which suggested that "related to" jurisdiction is the device by which suits "to which the debtor need not be a party but which may affect the amount of property in the bankruptcy estate" are forced into the bankruptcy forum. *See Zerand–Bernal Group, Inc. v. Cox,* 23 F.3d 159, 162 (7th Cir. 1994). The court simply never discussed the other two reservoirs of jurisdiction, because, in its view, the other two were not relevant.

**19.** Or, to put it in logic terms, "if A, then B" does not necessarily mean that "if B, then A." That a finding of "related to" jurisdiction is *sufficient* to make a finding of jurisdiction does not necessarily mean that it is *necessary* in order to make the finding of jurisdiction.

**20.** Of course, the Fifth Circuit's analysis could just as easily be seen to suggest that the three

categories of jurisdiction are described in section 1334 *only* to afford the breakdown found in section 157, an interpretation consistent with the "concentric circle" model urged by defendants here. But *Wood* was issued in 1987. Since that time, the Supreme Court has issued its clear directive that the primary interpretative tool to be employed for bankruptcy statutes is the plain meaning rule. *See United States v. Ron Pair Enterprises,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989). As it seems that a *plainer* interpretation of section 1334 is one which gives *jurisdictional* effect to each of the terms employed, we believe it safe to ascribe that intention to the Fifth Circuit's decision in *Wood.*

It is also worth noting that the court in *Wood* found that jurisdiction was *present.* The *holding* of *Wood* does not therefore compel the conclusion that, if a matter is not "related to" within the meaning ascribed by *Wood,* then subject matter jurisdiction is *absent.*

**21.** "Arising in" and "arising under" would otherwise be read out of the statute altogether.

11 or *arising in a case under title 11,* with respect to which an action could not have been commenced in a court of the United States absent jurisdiction, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). Again, Congress appears to have recognized that some matters that were "related to" a case *might be different than* those which "aris[e] under title 11" or which arise "in a case under title 11," in § 1334(c)(2). Interpreting one of the categories in § 1334(b) as encompassing all jurisdictional categories would tend to render the distinction delineated in § 1334(c)(2) nugatory. In fact, to reach the conclusion that a single category in § 1334(b) is all encompassing, we must ignore the statutory construction principal which requires that we read the statute as a whole. *Dole v. United Steelworkers,* 494 U.S. at 35, 110 S.Ct. at 934; *see also Oregon v. ACF Industries, Inc.,* 510 U.S. 332, 333, 114 S.Ct. 843, 845, 127 L.Ed.2d 165 (1994) (It is an "elemental canon of construction that a statute should be interpreted so as not to render one part inoperative."). This, we believe, was not the Fifth Circuit's

intent in *Wood.* A court does not cite to Congressional history that supports a broad construction of a statute and then create a test narrows that jurisdiction.

We conclude that the Fifth Circuit requires that the "prepositional qualifications" that define bankruptcy jurisdiction in § 1334 be construed separately so as to give them their broadest possible constitutional meaning. The plaintiff's suggestions to the contrary, *i.e.,* that the Fifth Circuit meant in *Wood* to limit jurisdiction by requiring all matters be "related to" the bankruptcy, are not supported by a close read of the *Wood* analysis. The court simply found that it need not address the other categories in that instance. We, on the other hand, *do* need to address the "other categories" here. Accordingly, we have found that part of the malpractice actions have "arisen in" the bankruptcy proceeding, even though they might not be "related to" matters within the meaning of *Wood.* We thus further conclude that the district court has jurisdiction over those malpractice claims that are arose in the bankruptcy case and which would not have existed but for the bankruptcy, thus falling under the "arising in" jurisdictional category found in 28 U.S.C. § 1334.[22]

22. Again, we recognize that a colorable reading of *Wood* is that it applies a "concentric circles" model (rather like a dart board) to section 1334. That reading would posit that the rationale for the tri-partite breakdown is to categorize and distinguish those sorts of matters which can be assigned for full adjudication to a bankruptcy court from those matters over which the district court must retain a greater quantum of adjudicatory authority. The "mandatory abstention" provision would thus be explained as Congress' effort to assure that "outer rim" matters which are already the subject of a state court action should be heard by that court, rather than by the federal courts, to insure that the extraordinarily broad reach of bankruptcy jurisdiction not sweep up into federal court every matter conceivably related to the administration of the estate of a debtor (an especially important consideration with regard to operating entities, be they individuals in chapter 13 or companies undergoing chapter 11 reorganization).

But the model does face two significant problems. First, it resurrects the summary/plenary distinctions of the Bankruptcy Act which were the express target of the Bankruptcy Reform Act of 1978. Congress sought to avoid those sorts of distinctions, and employed the "arising in, arising under, or related to" language in the 1978

version of the jurisdictional statute (section 1471). At that time, there was no counterpart to current section 157, nor was there a mandatory abstention provision of the sort now found in section 1334(c)(2). Obviously, then, Congress did not select these terms in 1978 to assure that it would be able to allocate the exercise of jurisdiction the way it did *six years later* in the 1984 amendments. The 1978 legislative history quoted by the court in *Wood* confirms a congressional intent quite different from the intent ascribed by those who subscribe to the "concentric circles" model.

The second difficulty is that it cannot deal with the obvious examples of matters which clearly *are* within the reach of bankruptcy jurisdiction, but which fall outside the boundaries of "related to" jurisdiction, as that term has been defined by the courts. We have noted earlier matters which "arise under" a provision of the Bankruptcy Code, but which cannot fall within "related to" jurisdiction. An action to determine the dischargeability of a tax debt (§ 523(a)(1)) or payments incident to a divorce (§ 523(a)(5)) or an action to enforce the nondiscrimination provisions of section 525 are but three examples that quickly come to mind. And the Fourth Circuit had little difficulty in finding jurisdiction to rule on the allocation of attorneys' fees from the trust

Having concluded that the district court has jurisdiction over the malpractice claims that involve preparation for bankruptcy and the bankruptcy itself, we now must determine whether to either exercise supplemental jurisdiction over the remaining non-bankruptcy causes of action, abstain from hearing even the malpractice claims that arise in the bankruptcy itself or, do nothing and retain only that jurisdiction which we can exercise under the "arising in" category of 28 U.S.C. § 1334. If the last option is chosen, we recognize that the parties may elect to litigate the matters in two separate forums. While we do not think this result is a wise use of judicial resources, we can not allow convenience to influence our jurisdictional determinations. *See Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 753–54 (5th Cir.1995).

B. SUPPLEMENTAL JURISDICTION

The Supreme Court held that when a state and a federal claim originate from a "common nucleus of operative fact," then federal courts have the power to hear the whole case. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724–25, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). In 1990, Congress enacted legislation in the Judicial Improvements Act, 104 Stat. 5089, which effectively codified the broad jurisdictional grant created by *Gibbs*.[23] The statute says in part:

Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in *any civil action* of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a) (emphasis added).

The 1990 enactment did not grant bankruptcy courts the power to hear matters over which the district court gained jurisdiction under this supplemental jurisdiction statute. *See* 28 U.S.C. § 157(a) (providing that a district court judge may only refer "any or all cases under title 11" and "any or all proceedings arising under title 11 or arising in or related to a case under title 11" to bankruptcy judges). The Fifth Circuit has accordingly concluded that, even if a district court could exercise jurisdiction supplemental to its bankruptcy jurisdiction under 28 U.S.C. § 1334, "there is nothing in the jurisdictional statutes to indicate that the district court could refer such a case to a bankruptcy court." *In re Walker*, 51 F.3d at 572. Thus, we cannot make a final determination regarding whether supplemental jurisdiction should be exercised in this case. We do, however, have several options available.

Under *In re Walker*, we could decide that we have no jurisdiction at all over supplemental matters and leave the parties to their own resources to seek a resolution from the district court. The district court then would have to decide the matter without any enlightenment from this court. This, we believe, is not an appropriate use of limited judicial resources.

Alternatively, we can issue a report and recommendation to the district court addressing the appropriate method to deal with this issue. In order to follow the teaching of *In re Walker*, the mandates of 28 U.S.C. § 157(a), and to provide the method best likely to provide the quickest adjudication of the issue while ensuring that district court is provided with the greatest assistance possi-

---

in *A.H. Robins, supra,* even though the administration of the estate had long receded into history. Even the Fifth Circuit was recently willing to accede, at least obliquely, that federal courts would have jurisdiction to both issue and enforce channeling injunctions, even though to do so would involve the federal courts in matters in the future over which they could no longer claim "related to" jurisdiction. *See Feld v. Zale Corporation,* 62 F.3d, at 760–61. If the model proves to be inadequate to deal with these sorts of cases, then the model itself ought to be reexamined.

**23.** Congress passed the broad supplemental jurisdictional statute in support of the *Gibbs* holding because a subsequent decision by the Supreme Court retreated from *Gibbs* and narrowed supplemental jurisdiction. *See Finley v. U.S.,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). The enactment of § 1367 effectively repealed the retreat and returned the breadth of supplemental jurisdiction to the prior-limits (as established by *Gibbs* ).

ble, we choose this second option and issue the following as a report and recommendation.

To determine whether supplemental jurisdiction could exist under 28 U.S.C. § 1367(a), we need to find a "loose factual connection between the claims" which is sufficient to suggest that "a plaintiff ordinarily would be expected to try them all in one judicial proceeding." CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, 13B FEDERAL PRACTICE & PROCEDURE § 3567.1, at 117 (1996); *Tower v. Moss*, 625 F.2d 1161, 1163 (5th Cir.1980) (citing WRIGHT & MILLER).

■ In the instant case, we find that the claims of legal malpractice, both related and unrelated to the bankruptcy case itself, are of such a nature that they would normally be expected to be tried in one judicial proceeding.[24] We note in passing that section 1367(a) applies to *any civil proceeding* over which the district court otherwise has original jurisdiction, and that nothing in the statute suggests that bankruptcy matters (a species of civil matter) *ought to be excluded.*

■ Having found supplemental jurisdiction to exist over the non-bankruptcy malpractice claims, we must next make a recommendation as to whether the district court should decline to exercise that jurisdiction under 28 U.S.C. § 1367(c). That subsection provides:

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

 (1) the claim raises a novel or complex issue of State law,

 (2) the claim substantially predominated over the claim or claims over which the district court has original jurisdiction,

 (3) the district court has dismissed all claims over which it has original jurisdiction, or

 (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

After reviewing the pleadings, we find that this case is one in which the state claims predominate over the federal claims[25] and that this is a case in which exceptional circumstances warrant that the district court should decline to exercise jurisdiction over the non-bankruptcy portion of this case.[26] Accordingly, we recommend that the district court decline to exercise its supplemental jurisdiction under §§ 1367(c)(2) and (c)(4).

## C. ABSTENTION

In the alternative, plaintiffs have moved this court to abstain from hearing all matters over which the court could exercise jurisdiction. For the following reasons, we deny this motion.

24. We make this determination in light of the following relevant facts: the claims all involve the defendant's continued representation of the plaintiff; although the forum changes, the representation of plaintiff by defendants all involve essentially a single dispute between the plaintiff and Fairfield Financial Group, Inc.; and, again with the recognition that the same dispute wound its way through three judicial forums, the alleged malpractice claims are essentially the same in each forum—the plaintiff followed the advice of the defendant attorneys and, as a result, was sanctioned and otherwise penalized because the advice was improper.

25. According to the complaint, the malpractice claims arise substantially out of the non-bankruptcy representation. *See* Plaintiff's First Amended Complaint.

26. We make this recommendation because of the tenuous relationship between the plaintiff current claim and this, or any other, bankruptcy court. For example, the bankruptcy plan for the plaintiff was confirmed in November of 1995 and all matters appeared to have been resolved within several months following that confirmation. The present matter, however, was not filed until the summer of 1996. Additionally, the plan does not provide for a distribution of the proceeds to creditors; rather, the plaintiff retained all interests in any subsequent malpractice litigation. This reversionary provision makes the dispute between the two individuals a matter that is related to this case only by the fact that one of the parties happened to have passed through our halls some time ago. In fact, for the reasons discussed in the text, *see infra*, we would invoke discretionary abstention over the entire case under § 1334(c)(1) if doing so did not extinguish one of the plaintiff's claims. In that light, recommending even further expansion of jurisdiction is not warranted.

■ Two types of abstention have been created by 28 U.S.C. § 1334. The first, codified at § 1334(c)(2), is called mandatory abstention.[27] Under that provision, a court must abstain if the following six requirements have been demonstrated: (1) a timely motion is made; (2) the proceeding is based on a state law claim or cause of action; (3) the proceeding is related to case under Title 11; (4) the proceeding does not arise under Title 11; (5) the action could not have been commenced in a federal court absent jurisdiction under 28 U.S.C. § 1334; and (6) and an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction. *Burke v. Donington, Karcher, Salmond, Ronan & Rainone, P.A. (In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.)*, 194 B.R. 750, 757 (D.N.J. 1996);[28] *see also Roddam v. Metro Loans, Inc. (In re Roddam)*, 193 B.R. 971, 980–81 (Bankr.N.D.Ala.1996); *Waugh v. Eldridge (In re Waugh)*, 165 B.R. 450, 452 (Bankr. E.D.Ark.1994).

In the present instance, the defendant requests that the court mandatorily abstain although the sixth element is clearly absent.[29] Without this required element, mandatory abstention cannot be granted. *Worldwide Collection Servs., Inc. v. Aaron (In re Worldwide Collection Servs., Inc.)*, 149 B.R. 219, 223–24 (Bankr.M.D.Fla.1992). Accordingly, the court will not grant the § 1334(c)(2) request to abstain.

■ A second type of abstention is permissive, or discretionary abstention. Codified at § 1334(c)(1), discretionary abstention provides the district court with the power to abstain from hearing civil proceedings arising under title 11, or arising in or related to cases under title 11.[30] This section arose from traditional notions of abstention which allow courts to decline to assert otherwise valid subject matter jurisdiction in instances in which they find matters are better resolved in state court or where the interests of justice so demand. 28 U.S.C. § 1334(c)(1).

■ We begin our analysis by recognizing that abstention undercuts the practical exercise of otherwise properly invoked federal jurisdiction by depriving the party opposing it of its choice of forum and imposing duplication of effort and delay on all parties. Thus, abstention should be applied gingerly in civil proceedings. *Fedders North America, Inc. v. Branded Products, Inc. (In re Branded Products, Inc.)*, 154 B.R. 936, 941–42 (Bankr. W.D.Tex.1993); *see also Deakins v. Monaghan*, 484 U.S. 193, 203, 108 S.Ct. 523, 530, 98 L.Ed.2d 529 (1988) (stating that federal courts have an obligation to exercise their jurisdiction except in extraordinary circumstances).

Given the breadth of potential bankruptcy jurisdiction provided by section 1334(b), we have previously suggested that adjudications

**27.** Section 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

**28.** Other courts have parsed § 1334(c)(2) into fewer requirements. *See, e.g., Citicorp Savings v. Chapman (In re Chapman)*, 132 B.R. 153, 157 (Bankr.N.D.Ill.1991) (providing list of four requirements); *Global Underwriting Management, Inc. v. Chatham Underwriting Management, Inc.*, 147 B.R. 601, 603 (Bankr.S.D.Fla.1992) (listing three requirements). While we believe this alter-

native test to be essentially the same, we have examined the six element test in this decision because it is the test suggested by the movants. *See* Defendants' Motion to Dismiss, or Alternatively, to Abstain, Jury Demand, and Answer to Complaint Subject Thereto, at 7.

**29.** In fact, the defendant concedes that this is the case in his motion. *See* Defendants' Motion to Dismiss, or Alternatively, to Abstain, Jury Demand, and Answer to Complaint Subject Thereto, at 8 (noting that a proceeding had not been commenced in state court).

**30.** Section 1334(c)(1) states:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

of "divorce, child custody proceedings, drunk driving charges, license revocation proceedings, and the like," may be proper areas for abstention. *In re Branded Products, Inc.,* 154 B.R. at 941. We are inclined to find that the current matters are of a similar ilk.

■■■ In the instant case, the plaintiff asks us to exercise jurisdiction over several state law claims of malpractice against his attorneys. While we recognize that the mere presence of state law issues should not be the decisive factor in determining whether a federal court should or should not abstain, neither should we ignore that fact. *See Eastland Partners Ltd. Partnership v. Brown (In re Eastland Partners Ltd. Partnership),* 199 B.R. 917, 920 (Bankr.E.D.Mich.1996). Absent the debtor's prior bankruptcy filing in this case, a federal court could not have exercised jurisdiction over this matter. *See* 28 U.S.C. §§ 1330–1367. While we will normally defer to a party's choice of forum, the differences in this case place it far from the realm of "normal." We briefly review some of these differences.

To begin, the case has not been brought during or in a period immediately following the filing of the bankruptcy. The debtor's plan was confirmed in November of 1995, all other matters were resolved in the spring of 1996, the case should have been closed by the summer of 1996, and yet, the present adversary proceeding was brought on August 30, 1996. Next, the plan, in a somewhat cryptic manner,[31] reserved the right to the debtor to bring this malpractice cause of action. Thus, we do not have an instance where this court should remain involved to ensure equitable distributions to creditors. All that must be resolved are the malpractice causes of ac-

tions between two parties who no longer have ties to this or any other bankruptcy forum. Again, if these were all the relevant facts we had, we would be inclined to abstain under § 1334(c)(1). This is not the case, however.

If we abstain in this case, however, a change in the Texas Deceptive Trade Practice Act ("DTPA") will operate to effectively extinguish the plaintiffs' substantive rights under that statute.[32] Because of this fact, we do not believe that abstaining is the appropriate route to follow. According to the Supreme Court:

> When a district court decides to dismiss or stay under *Colorado River,* it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all.

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 28, 103 S.Ct. 927, 943, 74 L.Ed.2d 765 (1983).

While this is not a *Colorado River* [33] case, the point appears to be no less applicable. The discretionary abstention statute housed in 28 U.S.C. § 1334(c)(1) provides for discretion when the "interest of justice" so mandates. If the Supreme Court expressed grave reservations about abstaining in *Colorado River* cases when litigants would be hurt by being forced into another forum, we should certainly consider that fact in an "interest of justice" evaluation.

In light of the fact that abstention would *ipso facto* defeat the DTPA claim asserted by the plaintiff, we find that the "interest of justice" mandates that we retain those por-

---

**31.** The right to bring an action against former bankruptcy counsel can be found in the plaintiff's disclosure statement under the main heading "Federal Income Tax Consequences." *See* Disclosure Statement for Debtor's Plan of Reorganization, at 16–18.

**32.** The DPTA was amended in 1995 so that claims related to professional services could no longer be brought under that Act. *See* Tex.Bus. & Com.Code Ann. § 17.49(c) (West Supp.1997). The amendments, however, had a provision that delayed enactment of the amendment and grandfathered all cases that were brought prior to

September 1, 1996. *See* Tex.Bus. & Com.Code Ann. § 17.42, Historical & Statutory Notes on 1995 Legislation, at 36 (West.Supp.1997).

The claims in the present controversy were filed by the plaintiff on August 30, 1996.

**33.** *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (defining abstention-like doctrine which allows federal courts to dismiss in very limited circumstances when a state court addressing a parallel issue is more appropriate forum).

tions of the claims over which we have "arising in" jurisdiction. Accordingly, the motion to abstain is denied.

### D. DEMAND FOR JURY

█ Finally, the defendants in this action request a jury but do not consent to a jury trial in bankruptcy court. This claim is based in the Seventh Amendment.

The Seventh Amendment provides: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." That phrase has been consistently interpreted to refer to those "suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 41, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989). Accordingly, a party's right to a jury trial depends, in part, on whether the matter is legal or equitable in nature.

The plaintiff appears to concede this first issue; recognizing that their malpractice claims are legal issues which normally entitle the defendants to a jury trial. We agree. The concession allows us to proceed more quickly to a second issue: whether the defendant's waived their right to a jury trial by submitting a claim for professional services against the plaintiff's bankruptcy estate? We also answer that question in the affirmative.

The United States Supreme Court has held that the right to trial by jury is lost upon submission of a claim in bankruptcy. Building upon the case of *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), the Court noted:

> By presenting ... claims [parties] subject[ ] themselves to all the consequences that attach to an appearance.... That requirement is in harmony with the rule generally followed by courts of equity that having jurisdiction of the parties to controversies brought before them, they will decide all matters in dispute and decree complete relief.... By submitting a claim against the bankruptcy estate, creditors subject themselves to the court's equitable power to disallow those claims, even though the debtor's opposing counterclaims are legal in nature and the Seventh Amendment would have entitled creditors to a jury trial had they not tendered claims against the estate.

*Granfinanciera, S.A.,* 492 U.S. 33, 59 n. 14, 109 S.Ct. 2782, 2799 n. 14 (citations omitted). That specific conclusion was reaffirmed in the *per curiam* decision of the Court in *Langenkamp v. Culp,* 498 U.S. 42, 111 S.Ct. 330, 112 L.Ed.2d 343 (1990).[34]

Here, we do not have a pre-existing bankruptcy claimant instituting actions against a debtor for preferential transfers, *see id.,* but rather a former debtor who alleges claims against his bankruptcy attorney. Although the facts are discernable, the applicable law is the same.

In *Billing v. Ravin, Greenberg & Zackin, P.A. (In re Billing),* 22 F.3d 1242 (3d Cir. 1994), the Third Circuit had to apply the holding of *Katchen* and its progeny to the

---

**34.** In that decision, the Court concluded the following:

> In *Granfinanciera* we recognized that by filing a claim against a bankruptcy estate the creditor triggers the process of "allowance and disallowance of claims," thereby subjecting himself to the bankruptcy court's equitable power. 492 U.S., at 58–59, and n. 14, 109 S.Ct., at 2799–2800, and n. 14 (citing *Katchen,* supra, 382 U.S., at 336, 86 S.Ct., at 476). If the creditor is met, in turn, with a preference action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity. *Ibid.* In other words, the creditor's claim and ensuing preference actions by the trustee become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity

jurisdiction. *Granfinanciera, supra,* 492 U.S., at 57–58, 109 S.Ct., at 2798–2799. As such, there is no Seventh Amendment right to a jury trial. If a party does not submit a claim against the bankruptcy estate, however, the trustee can recover allegedly preferential transfers only by filing what amounts to a legal action to recover a monetary transfer. In those circumstances the preference defendant is entitled to a jury trial. 492 U.S., at 58–59, 109 S.Ct., at 2799.

> Accordingly, "a creditor's right to a jury trial on a bankruptcy trustee's preference claim depends upon whether the creditor has submitted a claim against the estate." *Id.,* at 58, 109 S.Ct., at 2799.

*Langenkamp v. Culp,* 498 U.S. at 44–45, 111 S.Ct. at 331.

very issue in this case. There the court noted that a claim for malpractice was closely related to the court's resolution of allowance of attorney's fees. *Id.* at 1252. Accordingly, "[t]o the extent that ... the debtor was essentially objecting to the allowance of the attorney's claim and that the debtor's success meant the disallowance of the attorney's claim, [the court] agree[s] that the debtor's objection was part of the claim-allowance process." *Id.* (quoting *Germain v. Connecticut National Bank,* 988 F.2d 1323, 1330 n. 9 (2nd Cir.1993)); *see also First Fidelity Bank, N.A. v. Hooker Investments, Inc. (In re Hooker Investments, Inc.),* 937 F.2d 833, 838 (2nd Cir.1991) (by seeking to preserve right to file claim and right to jury trial, creditor sought to invoke bankruptcy court's equitable jurisdiction to "share in the distribution of Debtors' bankruptcy estate, but avoid the bankruptcy court's equitable jurisdiction so that the Bank can obtain a jury trial.... [They] offer[ ] no basis, however, for disregarding the general rule of *Langenkamp* and *Granfinanciera* that a creditor who invokes a bankruptcy court's equitable jurisdiction to establish a claim against a debtor's estate is also subject to the procedures of equity."). The close nexus between the malpractice claims and the court's approval of the defendant attorney's fees during bankruptcy made the fact that the malpractice claims exceed the fees irrelevant. *See Billing,* 22 F.3d at 1252 n. 17 (quoting *Granfinanciera,* 492 U.S. at 60 n. 14, 109 S.Ct. at 2800 n. 14 ("once a creditor has filed a claim against the estate, the bankruptcy trustee may recover the full amount of any preference received by the creditor-claimant, even if that amount exceeds the amount of the creditor's claim")).

This methodology appears to have been established by the Supreme Court in *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), where they stated:

> [O]nce it is established that the issue of preference may be summarily adjudicated absent an affirmative demand for surrender of the preference, it can hardly be doubted that there is also summary jurisdiction to order the return of the prefer-

ence. This is so because in passing on a § 57, sub. g objection a bankruptcy court must necessarily determine the amount of preference, if any, so as to ascertain whether the claimant, should he return the preference, has satisfied the condition imposed by a § 57, sub g on allowance of the claim. *Schwartz v. Levine & Malin, Inc.,* 111 F.2d 81 (C.A.2d Cir.1940). Thus, once a bankruptcy court has dealt with the preference issue nothing remains for adjudication in a plenary suit. The normal rule of res judicata and collateral estoppel apply to the decisions of bankruptcy courts.

*Id.* at 333–34, 86 S.Ct. at 475. In sum, the *Billing* court requires us to ask whether the complaining party has consented to the bankruptcy court's resolution of an issue that arises out of the same operative facts.

In the present case, the defendants participated in the process of allowance and disallowance of claims by seeking and accepting payments of fees and claiming a share of the estate as a priority creditor.[35] The fee submissions themselves, however, have the collateral effect suggested by *Billing* and *Katchen;* the party who submits the claims also submits to the judgment of the bankruptcy court on all issues that are related to the submission. *See Billing,* 22 F.3d 1242; *see also Jones v. Woody (In re W.J. Services),* 139 B.R. 824, 826 (S.D.Tex.1992) (finding fee application arises out of same nexus of operative facts as malpractice claim). Pursuant to this determination, we conclude, as did the Third Circuit, that by submitting a fee application, the defendants consented to the jurisdiction of this court to hear the malpractice claim. Accordingly, the jury demand is denied.

### Conclusion

The court has determined that plaintiff's claims for malpractice against his former attorneys is a matter which "arose in" a title 11 proceeding, *see* 11 U.S.C. § 1334(b); at least to the extent the claims involve representation during the bankruptcy and in preparation for the filing of the bankruptcy. Thus,

---

35. Upon approval of the court, plaintiff paid the defendant $2,000 for partial payment of fees and

expenses.

this court can exercise jurisdiction only over malpractice claims that involve the bankruptcy itself or that involve preparation for the filing of bankruptcy. We recommend the district court decline to exercise supplemental jurisdiction over the remaining matters— even though such supplemental jurisdiction is, we believe, available, because the ties between the matters in this litigation and the bankruptcy court are extremely tenuous. Accordingly, we issue a report and recommendation to the district to the effect that supplemental jurisdiction (28 U.S.C. § 1367) should not be exercised in this instance. This court does not, however, abstain from resolving those issues over which it can exercise jurisdiction. Therefore, the alternative motion to abstain is denied. Finally, we deny the defendant's demand for a jury trial.

Orders consistent with this decision shall be entered on even date.