In re Franklin Y. WRIGHT, Jr., Debtor.

Oscar Lozano, III, et. al., Plaintiffs,

v.

Swift Energy Company, et. al., Defendants,

v.

Robert Stone, et. al., Intervenors.

Bankruptcy No. 98–53314–C.
Adversary No. 98–05167–C.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

March 17, 1999.

---

OPINION AND ORDER

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for hearing Robert M. Stone's Motion for Remand And/Or Abstention in the above-titled adversary proceeding, which Franklin Y. Wright, the debtor, previously removed to this court from state court. The Court entertained argument from counsel, after which it took the matter under advisement. After further consideration, the Court finds that, for the reasons discussed below, the motion to remand should be GRANTED.

### I. Background

This is an attorney fee dispute in the personal injury action of Oscar Lozano, III and others against Swift Energy Resources. Rakowitz joined in the section as co-plaintiff, and Mr. Lozano retained Franklin Wright to represent him in that action. Wright referred Lozano's lawsuit to Robert Stone, believing himself entitled to a referral fee from any recovery in the case. Stone successfully represented Mr. Lozano, producing a settlement out of which he kept a portion based on a contingent fee arrangement.

Stone now rather emphatically maintains that Wright is not entitled to a referral fee. Wright therefore intervened in the Lozano lawsuit in order to assert his interest in the fee. Further complicating matters, Wright assigned his asserted interest in the fee to the various law firms that defended him in his own criminal prosecution for tax evasion.

Wright filed his Chapter 11 petition on July 9, 1998. Wright then removed this lawsuit—in which he had previously intervened in State court—to this Court pursuant to 28 U.S.C. § 1452(a). He filed his notice of removal on October 6, 1998, just 13 days before the matter was to be tried to a jury in state court. Wright's bankruptcy case was converted to Chapter 7 on October 15, 1998. The Chapter 7 trustee maintains that the referral fees are now property of Wright's bankruptcy estate, and that the assignments to Wright's criminal defense lawyers are subject to avoidance. Stone then filed his motion to remand the case to state court under 28 U.S.C. § 1452(b), or alternatively for abstention under 28 U.S.C. § 1334(c).

### II. Analysis

#### A. JURISDICTION

Subject matter jurisdiction over bankruptcy matters is conferred by 28 U.S.C. § 1334. If a civil proceeding does not arise in or under the bankruptcy case, that statute allows the district court to exercise subject matter jurisdiction if the proceeding is "related to" the bankruptcy case. 28 U.S.C. § 1334(b). A civil proceeding is "related to" the bankruptcy case if it is not "core" and if the outcome of the proceeding could conceivably have an effect on the administration of the bankruptcy estate. *In re Wood*, 825 F.2d 90, 93 (5th Cir.1987). A matter is "core" if it involves a substantive right solely created by the federal bankruptcy law or could not exist outside of bankruptcy. *See id.* at 97. The scope of core jurisdiction is essentially coterminous with the "arising in" and "arising under" aspects of bankruptcy jurisdiction. *See In re Simmons*, 205 B.R. 834, 843 (Bankr.W.D.Tex.1997). The instant lawsuit

is not "core" because it is not created by the bankruptcy law and because it had an independent existence outside of bankruptcy. *See id.* By the same token, however, the establishment of an entitlement to a referral fee out of the Lozano litigation could be a major asset of Wright's bankruptcy estate. This litigation (and its outcome) could therefore have a profound effect on the administration of this estate. The litigation is accordingly "related to" the bankruptcy case and is within the subject matter jurisdiction conferred by the statute. 28 U.S.C. § 1334(b); *see Wood*, 825 F.2d at 93.

## B. REMAND AND ABSTENTION

Stone has moved to remand this proceeding to the State court under 28 U.S.C. § 1452(b)(2). That statute provides that the court to which a civil proceeding is removed "may remand such case or cause of action *on any equitable ground.*" 28 U.S.C. § 1452(b). This court noted in *Branded Products* that remand under § 1452(b) is often indicated simply because the specter of lengthy and expensive litigation is raised by the cumbersome procedure of section 157(c)(1) and the uncertain legal questions regarding the bankruptcy court's ability to conduct jury trials in non-core proceedings. *See Fedders North America v. Branded Products, Inc. (In re Branded Products, Inc.)*, 154 B.R. 936, 952 (Bankr.W.D.Tex.1993).

Like the litigation at issue in *Branded Products*, this proceeding is a "related to" matter in which the bankruptcy court may not enter any final order absent the consent of both parties. 28 U.S.C. § 157(c). Stone has indicated that he will not consent to the final adjudication of this matter by this court. Thus, if this court retains the case and hears the matter, it would be required to "submit proposed findings of fact and conclusions of law to the district court." *Id.* The district court may then enter final orders after reviewing the bankruptcy court's proposals and conclusions, and after reviewing *de novo* those mat-

ters to which any party has specifically objected. *Id.* Thus, if this fee dispute is to be heard in the bankruptcy court, the case will have to work its way first through the bankruptcy court, and then again through the district court. 28 U.S.C. § 157(c)(1). The state court, in contrast, is able to enter final appealable orders directly after conducting the trial. The affidavit submitted in support of the motion indicates that the state court will be ready to proceed to trial as early as April of this year. These considerations indicate that equity requires the current litigation be remanded to the state court. *See Branded Products*, 154 B.R. at 952.[1]

This should be the end of the matter. However, Stone has also moved this court to *abstain* from hearing the present litigation under 28 U.S.C. § 1334(c). Section 1334(c) provides for "statutory abstention" by the district court (and by the bankruptcy court to which the matter is referred). *See id.* at 939. Section 1334(c)(1) imports the judicially-created doctrine of federal court abstention, specifically applying the doctrine to bankruptcy matters. 28 U.S.C. § 1334(c)(1); *see Pennzoil v. Texaco*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The standards governing § 1334(c)(1) "permissive abstention" are substantially the same as those governing remand under § 1452(b). *See In re Fairchild Aircraft Corp.*, 4 Tex. Bankr.Ct. Rep. 308, 313, 1990 WL 119650 (Bankr.W.D.Tex.1990), recommendation adopted, slip op. (W.D.Tex. 1990).

Section 1334(c)(2), in contrast, provides for "mandatory abstention" by a federal court sitting in bankruptcy, *compelling* the court to refrain from hearing related (*i.e.*,

---

1. One of Stone's arguments was that remand is appropriate because he has demanded a jury trial. This court has held on multiple occasions that a jury demand does not operate as an automatic "magic bullet" with which one can, with certainty, kill any attempts to bring litigation into the bankruptcy court. *See Branded Products*, 154 B.R. at 948–950. That a jury has been requested is certainly relevant. It is not, however, dispositive.

"noncore") proceedings in which state law issues predominate, and which can be timely adjudicated in state court. 28 U.S.C. § 1334(c)(2). Section 1334(c)(2) provides:

> "Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can timely be adjudicated, in a State forum of appropriate jurisdiction."

The enactment of section 1334(c)(2) was an apparent attempt by Congress to remedy the perceived constitutional infirmities in the bankruptcy jurisdictional scheme that Congress had enacted in 1978 as part of the Bankruptcy Reform Act. Those infirmities were exposed by the Supreme Court in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *See discussion, Branded Products*, 154 B.R. at 941–42. In *Marathon*, the Court ruled that a non-Article III court could not hear matters that concern "private rights" as opposed to so-called "public rights" which ostensibly lie at the "core" of bankruptcy jurisdiction. 458 U.S. at 83–87, 102 S.Ct. at 2877–80. Congress addressed the *Marathon* problem by enacting 28 U.S.C. § 157(c)(1), which ensures that final orders in matters concerning "private rights" are entered by an Article III court unless the parties consent otherwise. *See*

*Branded Products,* 154 B.R. at 942. Section 1334(c)(2) ostensibly furthers the same goal by requiring the federal courts to abstain if the matter involves primarily state-created rights and can be timely adjudicated in a state forum. Thus, though federal jurisdiction is present, Congress has decreed that it cannot be exercised in certain circumstances. 28 U.S.C. §§ 157(c)(1), 1334(c)(1), 1334(c)(2). Instead, the federal courts must "decline to exercise" their jurisdiction (the effect of "abstaining"). That usually means that the case before the court is dismissed. 17AC. WRIGHT, A. MILLER, E. COOPER, FEDERAL PRACT. & PROC., Jurisdiction 2d, § 4245 at 102 (2nd ed.1988); *see also Burford v. Sun Oil Co.*, 319 U.S. 315, 334, 63 S.Ct. 1098, 1107, 87 L.Ed. 1424 (1943); *New Orleans Public Serv. Inc. v. City of New Orleans*, 798 F.2d 858 (5th Cir.1986), *cert. denied,* 481 U.S. 1023, 107 S.Ct. 1910, 95 L.Ed.2d 515 (1987) (cases applying abstention in other federal contexts).

◼ And this is where a small difficulty arises. The usual *remedy* for abstention is not the same as the remedy for remand. In fact, the remedies are entirely inconsistent. When a court *remands* a case, it "sends it back" from whence it came.[2] When a court *abstains* from hearing a case, it "declines to exercise its jurisdiction," which in the usual case means that the case is dismissed.[3] If the case is remanded, the parties can litigate their dispute in state court. If the case is dismissed, there is no more lawsuit to litigate. The parties must start over. If limitations have run in the

---

2. *Black's Law Dictionary* defines "remand" as a verb meaning "to send back." BLACK'S LAW DICTIONARY 1293 (6th ed.1990). Once the case is sent back to the state court from the federal court (or to the trial court from an appellate court), the plaintiff must proceed there with the case, but retains the benefit of all previous filings for purposes of the statute of limitations. *See Fabrico Mfg. Corp. v. Wilson Sporting Goods, Co.*, 660 F.Supp. 601, 604 (N.D.Ill.1987).

3. The word "abstain" is not defined by the statute. Section 1334(c)(1) was evidently adopted to make clear that the judicially created rules of federal court abstention are applicable to cases in which federal subject matter jurisdiction is derived from Section 1334. The statute itself

tells us *when* a federal court should (or must) abstain from hearing certain matters arising in the bankruptcy case. It does not, however, tell us *what* abstention actually means. For that reason, we must turn to nonbankruptcy case law for guidance. *But see Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 774 (10th Cir. BAP 1997) (suggesting that the statute itself tells us all we need to know about abstention). The usual procedural device employed to "abstain" is to dismiss the matter pending before the federal tribunal, so that the parallel matter can proceed in the alternate forum. *See* 17AC. WRIGHT, A. MILLER, E. COOPER, FEDERAL PRACTICE AND PROCEDURE, Jurisdiction 2d, § 4245, at 102 (2d ed.1988) and cases cited and discussed therein.

meantime, then the rights of the plaintiff-situated party will have been severely prejudiced by an abstention, but will have been preserved by a remand. It was just this inconsistency (and the potential for abuse that always accompanies such procedural oddities) that led this court to find that mandatory abstention (and permissive abstention for that matter) were irrelevant in the context of a removed matter, and that the only relevant remedy for one opposing removal was remand under § 1452(b). *See Branded Products, supra,* 154 B.R. at 942.

The Fifth Circuit has recently overruled *Branded Products,* however, holding that statutory abstention *does* apply in the removal/remand context. *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.),* 163 F.3d 925, 929 (5th Cir.1999). Said the court:

> "Second, we note, only to reject out of hand, Cooper's assertion that statutory abstention does not apply to cases removed to federal court on the basis of bankruptcy jurisdiction. 28 U.S.C. § 1452. There is no textual support in the statute for this position, only a handful of bankruptcy court opinions support it, and the vast majority of courts hold otherwise. We endorse the majority rule."

*Southmark Corp.,* 163 F.3d at 929. The court's failure to analyze the issues presented in *Branded Products* leaves us without a resolution of the conundrum of inconsistent remedies discussed *supra.*

▮ Certainly the conundrum is present here. The facts of this case trigger mandatory abstention. This proceeding is based on State law claims.[4] The matter is not a core proceeding. *See Wood,* 825 F.2d at 93. Absent bankruptcy jurisdiction conferred by section 1334(b), there would be no subject matter jurisdiction over this lawsuit.[5] An action has been commenced in the state forum. The case can certainly be timely adjudicated in the state forum; the State court is ready to proceed within weeks. The statute allows no discretion. Stone is entitled to relief under § 1334(c)(2). We have already concluded that Stone is also entitled to relief under § 1452(b). Which relief do we accord to Stone? Do we send this case back to state court, or do we dismiss the lawsuit entirely?

An analogy might be helpful. One could conceive of the plaintiff's lawsuit as a vehicle. If the vehicle is permitted to proceed on only one of two available routes to its destination, then remand is a determination that the vehicle must take a different route. There is only one vehicle, but there are two routes. "Wrong way! Go back! You are not allowed to go this way!" That is what a remand order effectively says.

Alternatively, one could conceive of the plaintiff as having *two vehicles* available to it in order to arrive at his destination, one "rented" from the state court and one "rented" from the federal forum. Abstention is like being denied the use of the federal vehicle. "Sorry, you are not allowed to rent this vehicle from us. You'll have to go to elsewhere." That is essentially what abstention means. The "driver" has to give up the keys to the vehicle, and go use the other vehicle "rented" from the state court. Two lawsuits, two vehicles, but only one route.

The point of the analogy is simple. Federal law provides for two distinct remedies, to deal with two distinct problems. Congress, when it enacted section 1334(c), was presumably aware of the existing body of case law, and was also presumably aware of the removal/remand structure which it had erected in section 1452. Presumably, Congress knew and understood that "abstain" does not mean "remand." "Abstain" is a term of art, defined by reference to the body of federal law

---

4. Although federal law issues have been raised, the Court finds that the State law issues predominate. *See Gabel v. Engra, Inc. (In re Engra, Inc.),* 86 B.R. 890, 894 (S.D.Tex.1988).

5. The dispute is centered on a contractual dispute over attorney's fees. It raises no question of federal law. *See Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998). (federal subject matter jurisdiction requires a question of federal law to appear in the plaintiff's well-pleaded complaint). Both Franklin Wright and Roger Stone are citizens of Texas, and there can therefore be no diversity jurisdiction. *See Carden v. Arkoma Associates,* 494 U.S. 185, 187, 110 S.Ct. 1015, 1017, 108 L.Ed.2d 157 (1990); *Strawbridge v. Curtiss,* 3 Cranch 267, 2 L.Ed. 435 (1806).

which created the very notion of federal court abstention. That body of federal law makes clear that abstention is accomplished by the federal court's *dismissal* of the matter (taking away the keys), or at the very least retaining jurisdiction but not allowing it to proceed in federal court until the state court matter has been concluded ("holding the keys"). *See* 17AC. WRIGHT, A. MILLER, *supra.*

One can quickly see that, if the federal court abstains when there is no lawsuit pending in state court, then the plaintiff's only vehicle for arriving at his destination (his lawsuit) will be confiscated. By declining to make the vehicle in federal court available to the plaintiff, the federal court will leave the plaintiff with no vehicle at all. That plaintiff must obtain a new vehicle by refiling in state court. If the statute of limitations bars refiling, that plaintiff will be left stranded. *See Branded Products,* 154 B.R. at 940; *In re 666 Assocs.,* 57 B.R. 8, 12 (Bankr.S.D.N.Y. 1985). After *Southmark,* however, just such a jarring result is possible.[6]

The Supreme Court has directed that it is the courts' obligation to construe statutes to avoid absurd results, if alternative interpretations are available and consistent with the legislative purpose. *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 575, 102 S.Ct. 3245, 3252, 73 L.Ed.2d 973 (1982). In this case, it would be grossly inequitable to deprive the chapter 7 trustee of the opportunity to assert the debtor's interest in the lawsuit fees just because the case has previously been removed to federal court. Congress, in enacting § 1334(c)(1) and (c)(2), could not have intended to create such a booby trap for plaintiffs and trustees. *See id.*

After *Southmark,* we know that the federal court may not entertain the current litigation because § 1334(c) is applicable, and explicitly directs abstention—we may not permit the plaintiff to use this vehicle. *See Southmark,* 163 F.3d at 929. If we follow the abstention model (or analogy) then, by abstaining in favor of state court litigation, we compel the debtor/plaintiff to employ a different vehicle. In this case, however, there is no "other vehicle." There is no state court litigation in favor of which to abstain. The only "vehicle" in existence was removed to this court.[7] Were we to pursue the course normally pursued when abstention is granted, we would be taking away the only vehicle the debtor currently has. We would dismiss the case and compel the debtor to start over in state court. In view of the evident intention of Congress that the federal courts defer to the state courts in those circumstances where the litigation can be more timely adjudicated in the state forum, it would be an odd result indeed to compel the plaintiff to file a new lawsuit all over again. See *28 U.S.C. § 1334(c)(2).*

▪ Fortunately, the court has an alternative in this case, because Stone has also moved *to remand* the current litigation to the State court. The correct result in this case (given that it started as a removed action—one vehicle) would be to send the matter back to state court, thus achieving the objectives of mandatory "abstention" (*i.e.,* assuring that the federal court will not hear the matter and a state court will) while at the same time avoiding an unjust result. To be sure, we still do some violence to the statutes, because we convert the "discretionary remand" of section 1452(b) ("in the interests of justice") into what amounts to a "mandato-

---

**6.** Here is where the potential for gamesmanship emerges. Debtor sues defendant in state court. While the case languishes there for, say, three years (a possibility in all too many jurisdictions), debtor suffers financial reverses that require the debtor to file bankruptcy. Post-bankruptcy, the debtor removes the case to federal court (for, perhaps, reasons of economy). Defendant then sees an opportunity not just to send the case back to state court, but to eliminate the case entirely. Defendant moves that the federal court abstain, invoking 28 U.S.C. § 1334(c)(2). If the federal court abstains, the case is dismissed. In the

meantime, the statute of limitations has run on the debtor's lawsuit. *Voile!* The defendant has eliminated the lawsuit, and inherited a bulletproof defense (limitations) to any new suit. The bankruptcy court is, on the face of it powerless to avoid the result because abstention under section 1334(c)(2) is mandatory and admits of no discretion.

**7.** Or to put it another way, it was never a question of vehicles. Because this started as a removal action, it was always a question of routes. At all procedural points, there was only one

ry remand" not contemplated by the language of the statute. Fortunately, though, little damage is inflicted because, in the usual case, whenever the principles of "mandatory abstention" would compel remand of a removed action, the facts will have, in the usual case, counseled remand of the case in any event. *See Branded Products, supra.* While the court can seldom be comfortable with a circuit precedent growing out of a judicial interpretation of a federal statute that compels this sort of statutory revisionism, the court can take some small comfort in the principle of "no harm, no foul." In most removal situations, the *Southmark* decision will seldom change the ultimate outcome.

Because the matter may not proceed in federal court, and because it would be inequitable to eliminate the lawsuit by abstention, Stone's motion to remand pursuant to 28 U.S.C. § 1452(b) should be granted.

A note of caution should be sounded at this point, however. When the procedural posture of a removed action provides an opportunity such as that presented by the facts of this case in the future, prudent counsel for the defendant (or counter-defendant, or cross-defendant, as the case may be) will explicitly *not* seek remand of the case. They will move *only* for abstention, invoking the inflexible rules of 28 U.S.C. § 1334(c)(2), and will justifiably *insist* on dismissal of the case. They will be able to persuasively argue (relying on fifty years of Supreme Court precedent) that dismissal is the only remedy available—and will justifiably emphasize that they do *not* wish the case remanded to state court (else they would have asked for remand). To seek anything less, in view of the Fifth Circuit's ruling in *Southmark,* would be (in this court's view) malpractice.[8] Likewise, careful counsel for the plaintiff or a bankruptcy trustee will be required to exercise the power

of removal available under § 1452(a) only with extreme caution.

For these reasons, the defendant's motion to remand is GRANTED.

So ORDERED.

---

vehicle, because when a lawsuit is removed nothing remains in state court.

**8.** Some courts may well feel constrained to "fill in the gap" created by the Fifth Circuit's ruling in *Southmark,* and in such situations, to order remand of the case to state court even when the only relief requested has been abstention. They may well feel that an argument could be made that, when Congress enacted the "mandatory abstention" provision, that Congress really meant "remand" even though it didn't say so (and even

though Congress didn't alter or modify section 1452(b) in any way): They may well feel that "abstention" as used in subsection (c)(2) does not mean the same thing as "abstention" as used in subsection (c)(1) (a feat of legerdemain worthy of the Sophists and Thomas Aquinas), freeing them up to "to do the right thing" and invoke remand *sua sponte.* There is, at the least, a little "wiggle room" in the language of section 1452(b) that might permit a court to indeed remand even when no one has asked for remand, if a court is so inclined.