In re Doris HOFMANN, Debtor.

Ricky J. Poole, as next friend of
Doris Hofmann and John
Hofmann, Plaintiffs,

v.

Money Mortgage Corporation of America and Facelift Remodelers, Inc.,
Defendants.

Bankruptcy No. 99–51636.
Adversary No. 00–05016–C.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

Feb. 9, 2000.

Trey Bergman, Houston, TX, for Money Mortgage Corp. of America.

Michael G. Colvard, San Antonio, TX, for Facelift Remodelers Inc.

Stephanie M. Strolle, San Antonio, TX, for John and Doris Hofmann.

### MEMORANDUM DECISION ON MOTION TO REMAND

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for hearing the foregoing matter. After consideration of the presentation of counsel for the respective parties (including the representations of counsel regarding the status of the case in state court, its disposition in that forum, and the likelihood of its going to trial in that fo-

rum), the court enters this memorandum decision, concluding that this case should be remanded to the state court from whence it came.

## BACKGROUND

This case has a somewhat convoluted procedural background (most of which turns out not to be relevant to the ultimate basis for decision). Doris Hofmann is mentally incompetent. Ricky Poole has been appointed as next friend, to act on her behalf. Doris Hofmann was in bankruptcy in 1998. She was represented by William Chennault. In that bankruptcy case, her attorney filed (on her behalf), a lawsuit to invalidate the lien of Money Mortgage on her homestead. The lawsuit was never pursued. The bankruptcy case was dismissed. Doris Hofmann filed another bankruptcy in 1999, this time under Chapter 7 of the Bankruptcy Code.

On September 9, 1999, Poole filed on her behalf a lawsuit in state court against Money Mortgage and Facelift Remodelers. The case was filed during the pendency of the bankruptcy case but the cause of action was never listed as an asset in the debtor's bankruptcy schedules. The lawsuit alleged that Money Mortgage's lien was invalid on numerous grounds, including fraud, duress, mental incompetence, usury, and failure to make proper disclosures as required by state and federal law. The suit also charged Facelift Remodelers with fraud in obtaining the remodeling work from the debtor and her son, and with violations of the Texas Deceptive Trade Practices Act.

The bankruptcy case was still open when this state court lawsuit was filed, and it was still open when the defendant Money Mortgage was served (on September 13, 1999). However, it was *closed* the very next day (September 14, 1999).

The lawsuit proceeded in state court, where the plaintiff obtained a temporary restraining order and temporary injunction barring Money Mortgage from foreclosing on the property. During the course of the state court litigation, the defendants pointed out to the state court judge in their moving papers that the cause of action being asserted might not actually belong to the plaintiffs, as part of the causes of action were assets of the bankruptcy estate of Doris Hofmann. Poole moved to reopen this bankruptcy case on November 11, 1999. The court entered an order on November 14, 1999, reopening the case, before the ten-day period for responding to the motion had expired. The defendants in fact *did* respond timely (on November 18, 1999), and the court set that response for hearing on January 11, 2000. The defendants were not aware that the court had already entered an order granting the plaintiff's motion to reopen.[1]

On January 11, 2000, defendants first learned that an order reopening had already been filed. The court heard their response (treating it as a motion to reconsider), but denied the relief, keeping the bankruptcy case open. On January 20, 2000, the defendants filed a notice of removal in the state court action, bringing the case to this court. This brought to a halt the state court suit, which had been preferentially set for jury trial in state

---

1. Motions to reopen are normally (though not exclusively) filed by trustees or debtors. The practice of the court is to serve a copy of the order granting such motions on the party who filed the motion (here, the debtor by way of her next friend, Poole) and on the chapter 7 trustee. Creditors and other parties in interest would thus not normally have received a copy of the order granting the relief. Of course, parties are expected to monitor the docket in a case, and to take such action as they deem appropriate. *Cf.* FED.R.BANKR.P. 9022(a) (parties not relieved from time to file notices of appeal by clerk's failure to serve notice of entry of order). *See Faysound Limited v. Falcon Jet Corp.*, 940 F.2d 339, 344 (8th Cir.1991), *cert. den.*, 502 U.S. 1096, 112 S.Ct. 1175, 117 L.Ed.2d 420 (1992); *Witty v. Dukakis*, 3 F.3d 517, 520 (1st Cir.1993) (parties are not permitted to rely on clerk's office to do their homework for them); *Delaney v. Alexander (In re Delaney)*, 29 F.3d 516, 518 (9th Cir.1994) (parties required to independently monitor the docket to determine whether an order has been entered).

court for April 10, 2000. The removal also interrupted discovery efforts. As a result, the state court preferential setting might have been lost. Plaintiff filed this motion to remand the case to state court, alleging that this court lacks subject matter jurisdiction over the removal (rendering the removal improper), that the removal was untimely under Rule 9027 of the Federal Rules of Bankruptcy Procedure, and that, in equity, the action should be remanded to state court in any event.

## ARGUMENTS OF THE PARTIES

The court will not here attempt to recount all of the arguments of the parties, but will confine itself to summarizing what appear to be the most relevant of those arguments.

Plaintiff Poole says first of all that there is no subject matter jurisdiction over this action in federal court. The action is one that arises entirely under state law, and does not affect the administration of the bankruptcy estate. True, the bankruptcy case was reopened to administer this asset (*i.e.*, the cause of action), but that does not mean that the *subject matter* of the lawsuit (which lawsuit constitutes the asset to be administered) "conceivably affects the administration of the bankruptcy case."

Said differently, not every cause of action belonging to a bankruptcy estate falls within the "related to" jurisdiction of the bankruptcy court just because it belongs to the bankruptcy estate. The *Wood* test focuses not on *who* is bringing the lawsuit but on *what* the lawsuit is *about*. *See In re Wood,* 825 F.2d 90 (5th Cir.1987).

The defendants respond that, because the suit seeks to invalidate Money Mortgage's lien, it falls well inside the court's *core* jurisdiction, citing 28 U.S.C. § 157(b). Indeed, they add that the matter is *so central to the administration of the estate* (namely, the adjudication of claims), that the action is actually barred by *res judicata.* They point out that, in the bankruptcy case, Money Mortgage filed a motion for relief from stay, and that the debtor did not raise any of these concerns in response to that motion, though she could have (and, they say, should have).[2] In any event, the claim of Money Mortgage was (and is) a claim in this bankruptcy case, and that all of the causes of action asserted here are in the nature of compulsory counterclaims to that claim. Such compulsory counterclaims are core matters, they say, again pointing to section 157(b).[3]

2. The defendants cite the court to two recent Fifth Circuit decisions on the subject—*In re Southmark,* 163 F.3d 925 (5th Cir.1999) and *In re Intelogic Trace, Inc.,* 200 F.3d 382 (5th Cir.2000). Both cases involved malpractice actions brought in state court against bankruptcy professionals, which were removed to federal court. In *Southmark,* the court held that the suit was barred by collateral estoppel, because the reasonableness of the fee award implicated the conduct of the professionals, and had to be actually decided in the fee award process in the bankruptcy case. In *Intelogic Trace,* the court found (on the unique facts there presented) that the malpractice action was barred not by collateral estoppel but by *res judicata,* because the cause of action for malpractice was actually known and should have been raised in the fee application process but was intentionally not raised—in fact it was used to barter a reduction in the fees actually allowed in the bankruptcy case.

In both of these cases, the Fifth Circuit skirted the edge of a difficult question—can a full-blown lawsuit for malpractice be initiated as a "counterclaim" in a contested matter (there, a fee application). The defendants here claim that the court answered that question in the affirmative (at least in *Intelogic Trace* ), and that a similar rule should apply here. Money Mortgage moved for relief from stay in both prior bankruptcy cases, and was granted relief pretty much without a fight by the debtor. They say that she could have and should have raised the issues asserted in this lawsuit as a defense to the motions for relief from stay, and that her failure to do so means that this current litigation is now barred by *res judicata.* The answer to that question would turn on whether, in fact, the debtor could have or should have raised mental incapacity, fraud, duress, usury, and violations of the consumer credit code as defenses to the motion for relief from stay.

3. The defendants could cite as well to *Matter of Baudoin,* 981 F.2d 736, 744 (5th Cir.1993), which stands essentially for that proposition.

Plaintiff's second argument is that the notice of removal was not timely filed. Poole cites Rule 9027(a)(3), which governs litigation initiated while a bankruptcy case is pending. Here is how the rule reads (in relevant part):

> If a case under the Code is pending when a claim or cause of action is asserted in another court, a notice of removal may be filed with the clerk only within the shorter of (A) 30 days after receipt, through service or otherwise, of a copy of the initial pleading setting forth the claim or cause of action sought to be removed or (B) 30 days after receipt of the summons if the initial pleading has been filed with the court but not served with the summons.

FED.R.BANKR.P. 9027(a)(3). It is undisputed that this lawsuit was filed during the pendency of Hofmann's bankruptcy case, and that it was served on Money Mortgage (the party here seeking remand) on September 13, 1999. Poole says that the deadline for filing a notice of removal was therefore October 13, 1999 (thirty days after service).

The defendant (Money Mortgage) cries "unfair" at this application of the rule. They point out that the bankruptcy case was *closed* on September 14, 1999, the day after they were served. They had no place to *file* a notice of removal, unless they filed it the *next day*, effectively ab-breviating their 30 days afforded them by the rule to one day. They say that the rule should not be so construed. Instead, Money Mortgage argues that the thirty days should run from the day that they learned that the case had been reopened and would stay reopened—January 11, 2000. Alternatively, they argue for the application of subsection (a)(2) of Rule 9027, which sets the deadlines for actions initiated *before* the commencement of a case. In equity, they say that the order reopening the case should be treated as an "order for relief" as that term is used in this part of the rule, allowing them to enjoy the *90* day time frame provided there (*i.e.,* 90 days from the day the order for relief is entered).[4]

The plaintiff counters that the rule need not be read to require an impossibility, nor need the court somehow find a way to make subsection (a)(2) "stretch to fit." All the defendant needed to do in order to enjoy the benefits of removal to federal court *and* the benefit of the thirty day window to accomplish removal was to move the bankruptcy court to *reopen* the bankruptcy case. Section 350 says, after all, that a case may be reopened (the use of the passive voice tells us that any party in interest has standing to make the request) "to administer assets, to accord relief to the debtor, *or for other cause.*" 11 U.S.C. § 350(b). Certainly, says the plaintiff, the serendipitous closing of the case

---

4. The applicable part of the rule reads as follows:

> (2) Time for Filing; Civil Action Initiated Before Commencement of the Case Under the Code. If the claim or cause of action is pending when a case under the Code is commenced, a notice of removal may be filed only within the longest of (A) 90 days after the order for relief in the case under the Code ...

1. FED.R.BANKR.P. 9027(a)(2). The reference to "order for relief" found here is made to section 301 of the Code, which says that "the commencement of a voluntary case under a chapter of this title *constitutes* an order for relief under such chapter." 11 U.S.C. § 301 (emphasis added). There is no actual, independent *order* for relief, signed by a judge. The terminology is actually a carryover from pre-Code law. Under the Bankruptcy Act, an order was at one time in fact entered by a court, after a determination that the debtor qualified for bankruptcy relief (a process there known as "adjudication"). Eventually, that process was modified, relieving the court of having to perform this task and the voluntary petition was itself treated as an "adjudication." The legislative history explained that "[t]he term adjudication is replaced by a less pejorative phrase in light of the clear power of Congress to permit voluntary bankruptcy without the necessity for an adjudication, as under the 1898 Act, which was adopted when voluntary bankruptcy was a concept not thoroughly tested." HR REP. No. 595, 95th Cong.1st Sess. 321 (1977).

shortly after the state court lawsuit was filed and served, resulting in a *de facto* truncation of the thirty day window to seek removal, would be more than ample cause for the defendant to request the case be reopened.[5]

The plaintiff's third argument is that, if the removal *was* both proper and timely, equity still favors remanding the action to state court. Poole relies on *Browning v. Navarro*, 743 F.2d 1069, 1076–77 (5th Cir. 1984) and notes that, in this case, the matter arises under state law, is set to go to trial very soon, has almost nothing to do with the federal courts or this bankruptcy case (the case is only reopened to permit the trustee in Hofmann's bankruptcy to administer the non-exempt portions of Doris' cause of action), includes a co-plaintiff who is not a debtor in bankruptcy, and includes a co-defendant who has no claim in the bankruptcy case (Facelift). The plaintiff is entitled to (and has requested) a jury trial in state court, but might have difficulty having a jury trial in this court. Finally, the trustee has not opposed the action continuing in state court,[6] indicating at least by inference that the trustee agrees with and is prepared to honor the plaintiff's choice of forum.

The defendant counters that the issues in the case are essentially bankruptcy-related. Money Mortgage says they have a claim against the estate by virtue of their lien on the debtor's homestead and that the causes of action urged against them are essentially counterclaims to that claim. The action to avoid the lien is one properly set in the bankruptcy court as well, say the defendants, in part because they quote this

court as having said so at the hearing on motion to reopen, and in part because the state court judge is likely to be confused about the interplay of bankruptcy issues in the case. The defendants maintain that judicial estoppel will play a large role in the disposition of this matter, because the debtor has taken inconsistent positions regarding both the existence of this cause of action and the validity or invalidity of Money Mortgage's lien. This court, rather than the state court, should rule on judicial estoppel, especially given that the defense arises out of positions taken by the debtor in the bankruptcy court.

## ANALYSIS

### I. Subject Matter Jurisdiction

■ The court concludes that its subject matter to entertain this litigation is questionable. To be sure, Poole's cause of action seeks to invalidate the lien of Money Mortgage, and just as surely, section 157 says that core proceedings include (and are not limited to) determinations of the validity, extent, or priority of liens. *See* 28 U.S.C. § 157(b)(2)(K). And, to be sure, Congress expressly drafted with a broad brush in describing what might be core, in order to achieve efficient and effective administration of bankruptcy estates. *Matter of Wood*, 825 F.2d 90, 93 (5th Cir.1987); *In re Best Products, Inc.*, 68 F.3d 26, 31–32 (2nd Cir.1995). Still, what makes validity, priority and extent of liens a core matter is the need to resolve lien status in order to distribute estate assets, or to resolve lien dispute issues on exempt property in chapter 13 cases in order to devel-

---

5. Defendant retorts that it had no such duty— that it was the debtor who had the obligation to reopen the case because she had failed to disclose this lawsuit as an asset, and that time frames should thus run from that resulting reopening. The argument is facile, but it is also a red herring. The precise timing question raised by the initiation of litigation just days before the closing of a bankruptcy case could occur as well in a case in which there was no other reason for the debtor reopen the bankruptcy case. The defendant in that situation would have as much need to have the

case reopened, but no expectation that the debtor or anyone else would be doing so. The rule should be construed in a fashion that applies with fairness in *both* of these situations.

6. The trustee did not enter an appearance on this motion, save through counsel's appearance. The court takes judicial notice that, to date, the trustee has not affirmatively retained independent counsel to pursue this action.

op a viable plan. Poole's action here was initiated at the tail end of a chapter 7 case, with respect to exempt property that had already left the bankruptcy estate.[7] Poole seeks to apply state law principles in order to invoke a state law remedy.[8] Mindful of the history of the expression "core jurisdiction"—Justice Brennan's choice of words in *Marathon*[9]—only a Pharisaic construction of the statute's words could yield the conclusion that this sort of action is in any practical sense "core." [10]

In fact, one important indicator that this matter is *not* a core proceeding is that the lawsuit would not even belong in federal court at all but for the fact that the party who owns at least a part of the litigation is a trustee in a reopened bankruptcy case. Most (though certainly not all) core proceedings either arise under some provision of the Bankruptcy Code or arise in a bankruptcy case. This action does neither. Section 1334(c)(2), the "mandatory abstention" provision in title 28, while not dispositive here, is instructive. That section does not use the expressions "core" and "noncore" but instead refers to actions that are "related to a case ... but not arising under title 11 or arising in a case under title 11 ..." 28 U.S.C. § 1334(c)(2). There may not be an exact correspondence between this delineation and the core/noncore delineation in section 157 of title 28— but it is close. Section 1334(c)(2) has been read as an expression of Congress' understanding of the meaning of *Marathon*. *See Matter of Wood*, 825 F.2d at 92–95; *Lozano v. Swift Energy Co. (In re Wright)*, 231 B.R. 597, 600–01 (Bankr. W.D.Tex.1999). Using the section 1334(c)(2) measuring stick, this cause of action to avoid Money Mortgage's lien does not "measure up" as a core proceeding.

▆ Nor will it pass muster as a related proceeding.[11] The only bankruptcy connection to be found here is the trustee's ownership of at least part of the cause of action. Other than that, there is no way that the resolution of this lawsuit could "conceivably affect the administration of a bankruptcy case." *Matter of Wood*, 825 F.2d at 93. The trustee will of course be interested in the *outcome* of the suit, and will be happy to distribute any *recovery* for the benefit of creditors, but the mere fact

---

7. All property as of filing is property of the estate, but property claimed as exempt leaves the estate in a chapter 7 case as and when there are no objections to the debtor's claim of exemption to that property. *See Lowe v. Yochem (In re Reed)*, 184 B.R. 733, 737–38 (Bankr.W.D.Tex.1995).

8. Poole alleges that the lien of Money Mortgage should be adjudged invalid because Doris Hofmann lacked the mental capacity to enter into the transaction. Poole also maintains that the lien cannot be enforced against Doris Hofmann's homestead because it does not strictly comply with provisions of the Texas Property Code, rendering it violative of the Texas Constitution. Poole further alleges Money Mortgage has engaged in fraud, and should not be permitted to profit from that fraud. Poole seeks a remedy pursuant to section 37.002 *et seq.* of the Texas Civil Practices and Remedies Code.

9. *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Said Justice Brennan:

"[T]he restructuring of debtor-creditor relations, which is at the *core* of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is at issue in this case." *Id.*, 458 U.S. at 71, 102 S.Ct. at 2871 (emphasis added).

10. A Pharisaic construction of the statute would mean that the very lawsuit in *Marathon* would fall within the "core jurisdiction" of the bankruptcy court—one party was a debtor, the other party was a creditor, and the suit sought to "restructure" their relationship by collecting the debt.

11. The two inquiries must be separately conducted. The fact that a matter is not "related" does not necessarily mean that it lies outside the scope of bankruptcy jurisdiction. *See Simmons v. Johnson, Curney & Fields, P.C.*, 205 B.R. 834, 843–44 (Bankr.W.D.Tex. 1997). Some matters that are otherwise unrelated to the administration of a bankruptcy case might nonetheless be ones that either arise under the Code or arise in the course of a case. *See id.*

that the estate might recover money is not enough to bring the matter within the ambit of bankruptcy jurisdiction. *See id.*, at 94.

We have here focused on that portion of the lawsuit that has the *best* chance of falling under the umbrella of bankruptcy jurisdiction. The balance of the lawsuit will not be so shaded. Certainly the action of John Hofmann, who is not a debtor in bankruptcy, falls entirely outside. So also does the action of both Hofmanns against Facelift, which has no claim against the bankruptcy estate and is as far removed as was the outraged defendant in *Marathon.* We thus conclude that this action [12] lies beyond this court's subject matter jurisdiction, rendering the removal improper. *See* 28 U.S.C. § 1452(a).

## II. Timeliness of Removal under Rule 9027

■ Even were we mistaken in finding the notice of removal improper for lack of subject matter jurisdiction, we would be constrained to hold the removal improper as untimely. We reach this conclusion based on our reading of Rule 9027(a)(3), read in conjunction with section 350(b) of the Code. *See* FED.R.BANKR.P. 9027(a)(3); 11 U.S.C. § 350(b). This appears to be a matter of first impression, as our research has not uncovered any other decisions construing the rule in the factual context presented here.

12. The court emphasizes that it is the precise facts of this case and the posture of these parties that leads to the lack of subject matter jurisdiction found in this case. We emphasize that Congress did indeed intend to paint with a broad brush in enacting both section 1334(b) and section 157(b)(2) of title 28, and this decision should not be read as a reversal of this court's longstanding position in that regard. Bankruptcy jurisdiction, broad as it is, is not, after all, endless.

13. FED.R.BANKR.P. 9027(a)(3). Subsection (a)(2), by contrast, applies to the reverse situation—the state court lawsuit is pending when the bankruptcy case is then filed. FED. R.BANKR.P. 9027(a)(2).

To reiterate, the bankruptcy case was still pending on September 9, 1999, when the state court lawsuit was filed. It was also still pending on September 13, 1999, when the suit was served on Money Mortgage. However, the very next day, September 14, 1999, the bankruptcy case was closed (because the debtor received her discharge and the case was carried by the trustee as a no-asset case). The applicable part of Rule 9027 is subsection (a)(3), which governs those situations in which the bankruptcy case is pending when the lawsuit is filed.[13] That subsection would have given Money Mortgage until October 13, 1999 to file a notice of removal. Once the bankruptcy case was closed, however, there was no longer a federal case pending in which to file the notice of removal— much less a federal case to afford Money Mortgage the jurisdictional hook to justify such a removal. *See* 28 U.S.C. § 1452(a).[14] It looks as though the rule, as written, fails to account for the situation in which litigation is filed close to the conclusion of a bankruptcy case. Money Mortgage maintains that this is indeed an oversight on the part of the rule's drafters, and requires the intervention of the court to "fill in the gap."

Money Mortgage has suggested two alternatives. First, they suggest that the thirty day time frame should run from the date the case was re-opened.[15] Alterna-

14. The statute provides: "A party may remove any ... cause of action in a civil action ... to the district court ... if such district court has jurisdiction of such ... cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). Of course, jurisdiction under section 1334 applies to civil proceedings arising under title 11 (not applicable on these facts), arising in a case under title 11 (again not applicable), or related to such a case (based on our earlier analysis, also not applicable). *See* 28 U.S.C. § 1334(b).

15. Actually, even that time frame will not be good enough to save their removal petition, so Money Mortgage adds that the time should not be deemed to run until that point when

tively, they say that we should apply subsection (a)(2) to this situation—treating the order reopening as the equivalent of a new order for relief, and rendering the litigation "pending" as of the commencement of the "new" case.

Both of these suggestions require the court to ignore the language and structure of the Rule, and to invest into the concept of "reopening" of a case a meaning that, if accepted, would substantially alter the structure of the Bankruptcy Code. Rule 9027, after all, says nothing at all about measuring time frames from an order "reopening" a case. The time runs from the initiation of the litigation (if subsection (a)(3) applies) or from the initiation of the bankruptcy case (if subsection (a)(2) applies). The assumption behind both of these time lines is that removal happens in the context of·an open bankruptcy case, but that, if it is going to be done at all, it ought to be done promptly so that it does not excessively interfere with the due administration of the nonbankruptcy litigation. Otherwise, the threat of removal could hang as a Sword of Damocles over the litigation, inviting opportunistic behavior on the part of litigants and thoroughly disrupting the presiding court's efforts at managing its own docket.[16] A fair reading of the Rule, in light of its intended function to balance the competing interests of cen-·tralized bankruptcy administration, prevention of abuse on the part of bankruptcy estate players, and promoting judicial economy in both state and federal forums means that the time limits imposed by the Rule are as important to the nonbankruptcy litigation as they are to the bankruptcy process. *Cf.* 14C WRIGHT, MILLER & COOPER, FED. PRACT. & PROC. § 3732 (West 3rd ed.1998) (stating that the purpose of the

parallel provisions in section 1446 of title 28 "... is to prescribe a uniform time frame at the beginning of the action within which the question of whether the case will be heard in a state or federal court will be determined"); *McKinney v. Bopard of Trustees of Mayland Community College,* 955 F.2d 924, 927 (4th Cir.1992) (noting that the purpose of the 30 day time limit imposed by section 1446(b) is to give the plaintiff the certainty that the action will proceed in one or the other forum). There is a "speak-now-or-forever-hold-your-peace" feel to the deadlines imposed by Rule 9027(a)(2) and (a)(3).

Even more critical, however, is that Money Mortgage's proposal that we measure from the order reopening would fundamentally alter some very basic bankruptcy concepts. When a bankruptcy case is reopened, the original date for the "order for relief" is not altered. Neither is the date for "commencement of the case." These two dates play critical roles in the bankruptcy process, defining what property interests come into the estate as property of the estate, and what property interests fall outside because they happen to arise after the commencement of the case, for example. 11 U.S.C. § 541(a)(1). Preference periods run from the date of commencement of the case. 11 U.S.C. § 547(b)(4). Exemption rights are set by the order for relief date. 11 U.S.C. § 522(b). Claims are defined by whether they arise before or after the order for relief. 11 U.S.C. § 501. Nothing in section 350(b), which authorizes the reopening of bankruptcy cases, even vaguely suggests an alteration of these critically important dates.

they knew the order had been entered—which was January 11, 2000. In other words, they urge a kind of "equitable tolling" based on the fact that they did not receive notice from the court that the motion to reopen had been granted.

16. The thirty day limitation in Rule 9027(a)(3) tracks the similar time limit imposed on ordi-

nary removal of state court cases to federal district court pursuant to 28 U.S.C. § 1446(b). 10 LAWRENCE P. KING, COLLIER ON BANKRUPTCY, ¶ 9027.05[2], at 9027–11 (Matthew Bender 15th ed.1996). The federal "hook" is present in both cases on the day the state court litigation is filed, so it stands to reason that the party desiring to employ that hook do so within a specified time, to prevent abuse.

If Congress intended the "reopening" of a case as the equivalent of the entry of an "order for relief" for some purposes, as Money Mortgage suggests, then we would expect to see a detailed listing of the circumstances in which these basic concepts are altered by the reopening of a case within section 350 itself. After all, if a case is *converted* pursuant to section 548, or *dismissed,* pursuant to section 349, those sections set out in significant detail the resulting impact on the twin notions of "order for relief" and "commencement of the case." Section 350(b) is, by contrast, succinct and utterly silent with regard to impact on either of these notions. The fair inference to draw is that reopening a case has no impact whatsoever on either the date of the commencement of the case or the date of the order for relief, and we should not construe Rule 9027 as though it might, even in this limited context.[17]

■ We need not take the draconian interpretative course offered by Money Mortgage if an obvious and more palatable alternative is available. And one is. The plaintiff says that, if a party finds itself caught in the unique posture presented by our facts, the simple remedy available to that party is to ask for the case to be reopened, under section 350(b), so that it will have a "case" in which to file the notice of removal. With that simple solution, the Rule functions perfectly, without need for fantastic journeys into sophistry. Certainly, the statute provides just this remedy to parties aggrieved by the serendipitous (or perhaps less than serendipitous) closing of the case shortly after having been sued in state court. Section 350(b) says that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, *or for other cause.*" 11 U.S.C. § 350(b). The statute is written in the passive voice, meaning that its use is not by its own terms limited to a specific player in the bankruptcy process. *See* FED. R.BANKR.P. 5010 (any party in interest may file a motion to reopen); *see also* 3 LAWRENCE P. KING, COLLIER ON BANKRUPTCY ¶ 350.03[8] (Matthew Bender 15th ed. 1996) [18] Money Mortgage can thus reopen the case in order to file its notice of removal just as surely as the debtor was permitted to reopen the case in order to have an estate asset administered. "Other cause" is a generous term indeed, designed to encompass a broad panoply of circumstances which could not be anticipated by the drafters of the statute. *Collier, supra,* at ¶ 350.03[5]; *see also Hawkins v. Landmark Finance Co.,* 727 F.2d 324, 326 (4th Cir.1984); *In re Shondel,* 950 F.2d 1301, 1303 (7th Cir.1991) (creditor seeking recovery of an undisclosed asset of the debtor); *In re Leach,* 194 B.R. 812, 814 (E.D.Mich. 1996) (creditor sought to pursue revocation of debtor's discharge); *In re Wolff,* 175 B.R. 27, 29 (Bankr.E.D.Ark.1994) (creditor sought to file dischargeability complaint); *In re Frontier Enterprises, Inc.,* 70 B.R.

17. The defendants offer no explanation for how their proffered interpretation would work if the plaintiff never reopens the bankruptcy case at all. Under our facts, for example, let us suppose that, for whatever reasons, the bankruptcy case was *never* reopened (the bankruptcy trustee might have abandoned the cause of action, for example). Would defendants claim a continuing entitlement to remove the case to federal bankruptcy court anyway, premised on the 30 day time frame spelled out in Rule 9027(a)(3)? Measured from what date? Open for how long? Depending on whether, someday, someone opened the bankruptcy case? The questions are, of course, rhetorical—they are their own answer.

18. One might compare section 363, for example, which does not say that property of the estate may *be* used, sole or lease, but is rather written in the active voice, naming as the subject of the statutory sentence the trustee—and thereby excluding other persons from employing the statute to sell property of the estate. *See* 11 U.S.C. § 363(b). We find similar language in section 365, which allows a trustee to assume or reject executory contracts, but does not extend that power to, for example, the debtor. *See* 11 U.S.C. § 365(a). The reader will of course recall that, in a chapter 11 case, the "debtor" acts as a trustee by virtue of being the "debtor-in-possession." *See* 11 U.S.C. §§ 1101(a), 1106, 1107(a).

356, 359 (Bankr.C.D.Ill.1987) (creditor sought to correct a "blatant error in the distribution of proceeds of the estate"). There is no reason whatsoever to think that a party in Money Mortgage's position would not be permitted to employ the statute to afford them the ability to file a notice of removal.[19] This court thus concludes that, indeed, the time deadlines in Rule 9027(a)(3) apply even if the bankruptcy case is closed after the litigation is filed, because the party seeking to remove the litigation has an adequate means to achieve that end—it need merely file a motion to reopen.[20]

### III. Grounds for Remand

■ Even if the foregoing grounds were found insufficient to warrant granting the motion to remand, the equities of this case adequately support remand under section 1452(b). *See* 28 U.S.C. § 1452(b); *see also Browning v. Navarro,* 743 F.2d 1069, 1076 n. 21 (5th Cir.1984); *Fedders North America, Inc. v. Branded Products, Inc. (In re Branded Products, Inc.),* 154 B.R. 936, 946–51 (Bankr. W.D.Tex.1993); *McKesson Corp. v. El Paso Pharm, Inc. (In re El Paso Pharm, Inc.),* 130 B.R. 492, 496 (Bankr.W.D.Tex. 1991). The factors listed by Poole are persuasive. The case is much closer to trial in state court than it would be here in federal court (but for the delays that will be occasioned by this removal). The case can be tried to a jury with relative ease in state court, while a similar trial here in federal court would be cumbersome.[21] The plaintiff chose the state court forum and that forum selection deserves some deference. State law issues (and state law construction) predominate. There are no companion bankruptcy issues that suggest that judicial economy would favor this forum.[22] Some parties, including both John

19. The court looking at such a motion might well ask whether it would indeed be *appropriate* to reopen in order to entertain a removal petition, in effect reaching the question whether the federal forum should properly be made available to the defendant. That, however, seems to be an entirely appropriate inquiry. After all, once the case is closed, there is no independent *entitlement* to having access to a federal forum, and so no right to have the case moved into a federal court. If the case should later be reopened by the other party for reasons independent of the litigation, as happened here, the parties will be required to live with the nonbankruptcy forum. In this case, the bankruptcy trustee could *also* not remove the case to federal court, because the rule would similarly make such a removal time-barred.

20. In this district at least, a party would typically accompany such a motion with a motion for expedited consideration, to assure it received prompt attention to permit the removal to be accomplished within the deadline set by the Rule. *See* BANKR L.R. 9013. Parties in bankruptcy cases are often faced with such deadlines (objections to exemptions are the prime example) and routinely obtain expedited consideration to avoid injustice. *See* FED. R.BANKR.P. 4003(b).

21. Section 157(e) permits this court to conduct jury trials, but only with the consent of the parties—and it is likely that the defendants would not consent. *See* 28 U.S.C. § 157(e); FED.R.BANKR.P. 9015(b). That would cause a delay because the case would then have to be removed to federal district court, where it would be placed on a docket already filled with criminal cases, all of which have priority. *See* 28 U.S.C. § 157(d); *see also Matter of Clay,* 35 F.3d 190 (5th Cir. 1994). It could be years before the case would be tried. Even if the parties consented to trial in this court, those aspects of the case that are noncore (and this court believes that means the entire lawsuit) could only be tried to final judgment before this court again with the consent of the parties. *See* 28 U.S.C. § 157(c)(1). The district court would have to inspect the jury's findings *de novo* and to then enter its judgment—a process that could be time-consuming, to say nothing of the constitutional concern that *de novo* review of a jury's verdict raises under the Seventh Amendment (which prohibits reexamination of any fact tried by a jury). *See id.; see also* U.S. CONST. Amend. VII; *see generally In re Branded Products,* 154 B.R. at 950 n. 24.

22. The defendants' suggestion that the state court will not know how to properly apply notions of judicial estoppel—deemed to be a central issue for the defense—substantially underestimates the ability of state court judges to apply a doctrine that is not unique to the bankruptcy courts. The state court will, it is true, have to do some digging to

Hofmann and Facelift Remodelers, have no independent connection whatsoever with the federal forum, and hailing them into this court is especially unfair to them. Indeed, they might justifiably claim lack of subject matter jurisdiction, compelling the *bifurcation* of the case between two different courts—with all the costs, delay, and potential for inconsistent results that attend such a step. The litany of reasons nearly tracks the list in *Browning v. Navarro*, and a decision to remand on these facts would be entirely consistent with this court's earlier rulings in both *El Paso Pharm* and *Branded Products*. *See* citations *supra*. The court concludes that, on equitable grounds and the broad discretion afforded this court by section 1452(b), remand is the proper thing to do. *See Browning v. Navarro, supra* at 1077 n. 21 (the bankruptcy remand statute affords "a much broader range of discretion than is permitted district courts in deciding whether to remand under [section] 1447(d)").

### Conclusion

For all of the foregoing reasons, the court comfortably concludes that remand of this case is the right thing to do. The court doubts that it has subject matter jurisdiction to even entertain this lawsuit, but even if it did, the court believes that the defendants failed to timely remove this case to federal court (this notwithstanding the fact that the bankruptcy case was closed the day after the defendants were served with the state court lawsuit). In any event, the court has substantial discretion to remand cases, and the facts of this case easily support the exercise of that discretion here. The court, by separate order, remands this case to the 166th Judicial District Court, Bexar County, Texas.

fully appreciate the impact of the dismissal of the first bankruptcy case on the issue, but judges do research on arcane areas of law all of the time. This court is confident that the task will not unduly challenge the perfectly capable intellectual resources of its state court colleagues.